**OUTTEN & GOLDEN LLP**
Justin M. Swartz (JS 7989)
Linda A. Neilan (LN 4095)
Rachel M. Bien (RB 6919)
3 Park Avenue, 29th Floor
New York, New York 10016
Telephone: (212) 245-1000

**FITAPELLI & SCHAFFER, LLP**
Joseph A. Fitapelli (JAF 9058)
Brian S. Schaffer (BSS 7548)
1250 Broadway, Suite 3701
New York, New York 10001
Telephone: (212) 300-0375

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **ROBERT O'DELL, FRANCISCO DIAZ, ANABEL DIAZ, and ALICIA PEREZ, on behalf of themselves and all others similarly situated,**<br><br>**Plaintiffs,**<br><br>-against-<br><br>**AMF BOWLING CENTERS, INC.,**<br><br>**Defendant.** | **09 CV 759 (DLC)** |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT, CONDITIONAL CERTIFICATION OF THE SETTLEMENT CLASS, APPOINTMENT OF PLAINTIFFS' COUNSEL AS CLASS COUNSEL, AND APPROVAL OF PLAINTIFFS' PROPOSED NOTICE OF SETTLEMENT AND CLASS ACTION SETTLEMENT PROCEDURE

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................ iii

INTRODUCTION ............................................................................................ 1

FACTUAL AND PROCEDURAL BACKGROUND ................................................. 1

    I.    Procedural History ............................................................................. 1

    II.   Discovery ........................................................................................ 2

    III.  Plaintiffs' Factual Allegations ............................................................ 2

    IV.  Settlement Negotiations .................................................................... 3

SUMMARY OF THE SETTLEMENT TERMS ...................................................... 3

    I.    The Settlement Fund ........................................................................ 3

    II.   Release .......................................................................................... 4

    III.  Eligible Employees .......................................................................... 4

    IV.  Allocation Formula .......................................................................... 4

    V.   Attorneys' Fees and Litigation Costs .................................................. 5

    VI.  Service Awards ............................................................................... 6

    VII. Settlement Claims Administrator ........................................................ 6

    VIII. Injunctive Relief .............................................................................. 6

CLASS ACTION SETTLEMENT PROCEDURE .................................................... 7

ARGUMENT ................................................................................................... 8

    I.    Preliminary Approval of the Settlement Is Appropriate ......................... 8

        A.   The Settlement is Fair, Reasonable, and Adequate ......................... 10

            1.   Litigation Through Trial Would be Complex, Costly, and Long (Grinnell Factor 1) ................................................. 11

2.      The Reaction of the Class Has Been Positive (Grinnell Factor 2)............................................................................11

3.      Discovery Has Advanced Far Enough to Allow the Parties to Responsibly Resolve the Case (Grinnell Factor 3).................12

4.      Plaintiffs Would Face Real Risks if the Case Proceeded (Grinnell Factors 4 and 5)........................................................13

5.      Establishing a Class and Maintaining it Through Trial Would Not Be Simple (Grinnell Factor 6)...........................................13

6.      AMF's Ability to Withstand a Greater Judgment Is Not Assured (Grinnell Factor 7) ....................................................14

7.      The Settlement Fund is Substantial in Light of the Possible Recovery and the Attendant Risks of Litigation (Grinnell Factors 8 and 9)........................................................................14

II.     Conditional Certification of the Rule 23 Class Is Appropriate....................16

A.      Numerosity........................................................................................18

B.      Commonality......................................................................................18

C.      Typicality ..........................................................................................19

D.      Adequacy of the Named Plaintiffs ......................................................19

E.      Certification is Proper Under Rule 23(b)(3) ........................................20

1.      Common Questions Predominate ............................................20

2.      A Class Action is a Superior Mechanism ................................21

III.    Plaintiffs' Counsel Should Be Appointed as Class Counsel........................22

IV.     The Proposed Class Notice is Appropriate ...................................................23

A.      The Proposed Class Notice Satisfies Due Process................................23

B.      The Notice Plan and Award Distribution Process Are Appropriate ....24

CONCLUSION ........................................................................................................24

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) ......................................................16, 20, 21

*Brooks v. Am. Export Indus., Inc.*, No. 71 Civ. 5128, 1977 U.S. Dist. LEXIS 17313
    (S.D.N.Y. Feb. 17, 1977) ...........................................................................................15

*Cagan v. Anchor Sav. Bank FSB*, No. 88 Civ. 3024, 1990 U.S. Dist. LEXIS 11450
    (E.D.N.Y. May 17, 1990) ...........................................................................................15

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974)..............................................10, 15

*Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473 (2d Cir. 1995) ........................................18

*County of Suffolk v. Long Island Lighting Co.*, 710 F. Supp. 1422 (E.D.N.Y. 1989) ..................17

*Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152, 165 (S.D.N.Y. 2008) ......................................23

*Dziennik v. Sealift, Inc.*, No. 05 Civ. 4659, 2007 U.S. Dist. LEXIS 38701 (E.D.N.Y. May
    29, 2007) .................................................................................................................20

*Frank v. Eastman Kodak Co.*, 228 F.R.D. 174 (W.D.N.Y. 2005) ........................................ passim

*Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147 (1982) ...................................................................18

*Gilliam v. Addicts Rehab. Ctr. Fund*, No. 05 Civ. 3452, 2008 U.S. Dist. LEXIS 23016
    (S.D.N.Y. Mar. 24, 2008) .......................................................................................5, 16

*Green v. Wolf Corp.*, 406 F.2d 291 (2d Cir. 1968) .......................................................................21

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ..................................................9, 17, 22

*In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164 (S.D.N.Y. 2000)...11, 12, 13

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*, No. 05 Civ. 10240, 2007 U.S. Dist.
    LEXIS 57918 (S.D.N.Y. July 27, 2007) ....................................................................10

*In re Gen. Motors Corp. Pick-up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768
    (3d Cir. 1995).........................................................................................................17

*In re Traffic Executive Ass'n*, 627 F.2d 631 (2d Cir. 1980)..........................................................9

*In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124 (2d Cir. 2001).................20, 21, 22

*In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516 (3d Cir. 2004)........................................9, 12

*Kamean v. Local 363, Int'l Bhd. of Teamsters*, 109 F.R.D. 391 (S.D.N.Y. 1986) ........................18

*Marisol A. v. Giuliani*, 126 F.3d 372 (2d Cir. 1997) ....................................................19

*Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072 (2d Cir. 1995) ..................................9

*McBean v. City of New York*, 228 F.R.D. 487 (S.D.N.Y. 2005)....................................................21

*Milonas v. Williams*, 691 F.2d 931 (10th Cir. 1982) ....................................................19

*Mohney v. Shelly's Prime Steak Stone Crab & Oyster Bar*, No. 06 Civ. 4270, 2009 U.S. Dist. LEXIS 27899 (S.D.N.Y. Mar. 31, 2009) .............................................. passim

*Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615 (9th Cir. 1982) ..................................15

*Reyes v. Buddha-Bar NYC*, No. 08 Civ. 2494, 2009 U.S. Dist. LEXIS 27852 (S.D.N.Y. Jan. 29, 2009)..........................................................................24

*Reyes v. Buddha-Bar NYC*, No. 08 Civ. 2494, 2009 U.S. Dist. LEXIS 45277 (S.D.N.Y. May 28, 2009) .......................................................................... passim

*Robidoux v. Celani*, 987 F.2d 931 (2d Cir. 1993)................................................18, 19

*Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590 (2d Cir. 1986) ..................................20

*Stefaniak v. HSBC Bank USA, N.A.*, No. 05-CV-720, 2008 U.S. Dist. LEXIS 53872 (W.D.N.Y. June 28, 2008) .........................................................................5

*Toure v. Cent. Parking Sys.*, No. 05 Civ. 5237, 2007 U.S. Dist. LEXIS 74056 (S.D.N.Y. Sept. 28, 2007) .......................................................................20

*Trinidad v. Breakaway Courier Sys., Inc.*, 05 Civ. 4116, 2007 U.S. Dist. LEXIS 2914 (S.D.N.Y. Jan. 12, 2007)........................................................................19

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96 (2d Cir. 2005) .......................................8, 9

*Westerfield v. Wash. Mut. Bank*, No. 08 Civ. 00287, 2009 U.S. Dist. LEXIS 54553 (S.D.N.Y. June 26, 2009)........................................................................23

*Wright v. Stern*, 553 F. Supp. 2d 337 (S.D.N.Y. 2008) ..................................................9

## FEDERAL RULES

Fed. R. Civ. P. 23........................................................................... passim

Fed. R. Civ. P. 54....................................................................................6

**TREATISES**

Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* (4th ed. 2002)....................7, 9, 17

**INTRODUCTION**

Subject to Court approval, the parties have settled this case for $670,000 plus meaningful injunctive relief. The proposed settlement resolves the Plaintiffs' and class members' claims and satisfies all of the criteria for preliminary settlement approval under federal law.

Through this motion, Plaintiffs respectfully request that the Court (1) grant preliminary approval of the Joint Settlement and Release ("Settlement Agreement") attached as Exhibit C to the Declaration of Justin M. Swartz in Support of Plaintiffs' Motion for Preliminary Approval of Settlement ("Swartz Dec.");[1] (2) provisionally certify the settlement class under Fed. R. Civ. P. 23(b)(3) in connection with the settlement process; (3) appoint Outten & Golden LLP and Fitapelli & Schaffer, LLP as Class Counsel ("Class Counsel"); and (4) approve the Notice of Proposed Settlement of Class Action Lawsuit and Fairness Hearing ("Proposed Notice") attached as Exhibit A to the Notice of Motion and direct its distribution.

Preliminary approval and provisional certification will allow the parties to notify the class of the settlement and of their right to object or opt out. Preliminary approval does not require the Court to rule on the ultimate fairness of the settlement, but to make only an "initial evaluation" of the fairness of the proposed settlement and whether there is "probable cause" to submit it to class members. The Court should permit notice of the settlement to be sent to class members because the settlement easily falls within the "range of possible approval."

**FACTUAL AND PROCEDURAL BACKGROUND**

**I.    Procedural History**

The Plaintiffs are former and current hourly food service workers – Lane Captains, Lane Servers, Lane Attendants, Lounge Attendants, Food & Beverage Attendants, Runners and

---

[1]    Unless otherwise indicated, all exhibits are attached to the Declaration of Justin M. Swartz.

Bartenders – at AMF Bowling Centers, Inc. ("AMF" or "Defendant"), the world's largest owner and operator of bowling centers. On January 27, 2009, Plaintiff Robert O'Dell commenced this action as a putative class action under Fed. R. Civ. P. 23, bringing a claim under the New York Labor Law ("NYLL") for the misappropriation of mandatory gratuities that AMF charged its event customers. (Swartz Dec. ¶ 11.) On March 4, 2009, Mr. O'Dell amended his Complaint, adding an additional tip misappropriation claim for tips paid voluntarily by non-event or "Open Bowling" customers. Francisco Diaz, Anabel Diaz, and Alicia Perez also joined the lawsuit as Named Plaintiffs. (*Id.* ¶ 12.)

## II.   Discovery

The parties engaged in substantial informal discovery before agreeing to resolve this case. AMF produced documents and data requested by Plaintiffs, including a sampling of event invoices covering the 6-year statute of limitations period, data showing the allocation of tips and mandatory gratuities by position for the entire 6-year period, job descriptions of positions which Plaintiffs claimed were tip ineligible, and memoranda describing AMF's tip policies. (Swartz Dec. ¶ 13.) In addition to electronic and paper discovery, Plaintiffs' counsel obtained factual information from the Named Plaintiffs regarding their job duties and the job duties of AMF's employees whom Plaintiffs alleged were ineligible for tips, as well as Defendant's policies and procedures for allocating tips. (Swartz Dec. ¶ 17.)

## III.   Plaintiffs' Factual Allegations

This case centers on two categories of gratuities that AMF's bowling customers pay – an 18% mandatory gratuity that AMF charges customers who contract for private parties and corporate events, and "Open Bowling" tips paid by regular bowling customers who are not party or event attendees. The Complaint alleges that AMF misappropriated both kinds of tips by

distributing portions of them to employees who are not entitled to tips under the NYLL.[2]

(Ex. B (Am. Compl.).)

## IV.    Settlement Negotiations

Instead of spending significant resources litigating this relatively small case, and to manage the risk of loss, the parties agreed to participate in private, non-binding mediation to attempt to resolve this case. They hired Michael D. Young ("Mr. Young") of JAMS, a well-known employment mediator. (Swartz Dec. ¶ 18.) The parties attended a full day of mediation on June 12, 2009 at which they agreed on the material terms of a settlement. (*Id.*) Over the next 10 weeks, they negotiated the other terms of the settlement, including the timing and allocation of the payments. On August 27 and 28, 2009, the parties executed the Settlement Agreement. (Ex. C (Stlmt. Agmt.).)

## SUMMARY OF THE SETTLEMENT TERMS

## I.    The Settlement Fund

The Settlement Agreement creates a fund of $670,000 ("the Fund"). The Fund covers attorneys' fees and costs, class members' awards, interest, and service payments to class representatives. (Ex. C (Stlmt. Agmt.) ¶ 3.1(A).) AMF is responsible for the cost of hiring a professional settlement administrator and for the employer's share of all payroll taxes. None of the Fund reverts to AMF under any circumstances.[3] (*Id.* ¶¶ 2.1, 3.1(C), 3.5(C).)

---

[2]    The ineligible employees include managers, sales representatives, administrative assistants, chefs, cooks, dishwashers, food expediters, food preparers, mechanics, equipment specialists, counter/desk attendants, stewards, janitors, and party and event coordinators. (Swartz Dec. ¶ 14.)

[3]    The parties agreed to divide interest accrued from the fund equally between Plaintiffs and AMF in the event that preliminary approval of the settlement is not granted by November 1, 2009. If approval is granted before that date, all accrued interest will remain part of the fund and be distributed to Class Members. (Ex. C (Stlmt. Agmt.) ¶ 3.1(B).)

## II.    <u>Release</u>

The Settlement Agreement provides that every class member who does not timely opt out of the settlement will release AMF from all NYLL claims for misappropriated tips that were alleged in this lawsuit.  (*Id.* ¶¶ 2.5, 4.1.)

## III.    <u>Eligible Employees</u>

The Settlement Agreement entitles two sets of workers to receive payments from the Fund – "300 Center" workers and "Traditional Center" workers.  The 300 Center workers are food and beverage workers who work or worked at AMF's two largest bowling centers at Chelsea Piers in New York City and in Melville, Long Island.  AMF refers to these centers as the "300 Centers."  Both 300 Centers routinely host corporate functions and other large events, however, the 300 Center located at Chelsea Piers generated far more gratuities than the 300 Center located in Melville.  (Swartz Dec. ¶ 15.)  The Traditional Center workers are food and beverage workers who work or worked at AMF's smaller bowling alleys that hosted events much less frequently.  (*Id.* ¶ 15.)

According to AMF's records, the 300 Centers generated approximately 95 percent of the mandatory gratuities and tips paid by AMF's customers which Plaintiffs allege were misappropriated to tip ineligible employees.  (Swartz Dec. ¶ 16.)  The Chelsea Piers location generated approximately 90 percent of the misappropriated tips and gratuities.  (*Id.* ¶ 16.)  As a result, the vast majority of the class damages belong to the 300 Center located at Chelsea Piers.

## IV.    <u>Allocation Formula</u>

The Settlement Agreement accounts for the fact that the 300 Center class members – particularly, the Chelsea Piers 300 Center class members – incurred a disproportionate share of the total damages.  The formula allocates $50,000 of the settlement to Traditional Center class

members and the remainder of the settlement to 300 Center class members. (Ex. C (Stlmt. Agmt.) ¶ 3.4(B)(1).) The 300 Center settlement is divided between the Chelsea Piers and Melville class members according to the proportion of damages incurred at each location. Under this formula, ninety percent of the 300 Center settlement will be allocated to Chelsea Piers workers and ten percent will be allocated to Melville workers. (*Id*. ¶ 3.4(B)(2)(a).)

For both 300 Center and Traditional Center class members, the allocation formula the parties agreed upon allocates the fund based on weeks worked. (*Id*. ¶¶ 3.4(B)(1)(a) and (B)(2)(b).) In order to ensure that each Class Member receives a meaningful award, the parties have agreed to limit the settlement class to 300 Center class members who worked for AMF for at least one month and Traditional Center class members who worked for AMF for at least 10 months. (Ex. C (Stlmt. Agmt.) ¶ 1.4.)[4] Fifty percent of each settlement payment will be deemed back wages and fifty percent interest. (*Id.* ¶ 3.5(A).)

## V.     Attorneys' Fees and Litigation Costs

Consistent with the Settlement Agreement, Plaintiffs' counsel will apply for 33% of the Fund as attorneys' fees.[5] (*Id.* ¶ 3.2(A).) Plaintiffs' counsel will also seek reimbursement for their actual out of pocket litigation costs and expenses from the Fund, which "shall not exceed $20,000." (*Id.*) The Court need not rule on fees and costs now. Plaintiffs' counsel will file a formal motion for approval of fees and costs along with their motion for final approval of the settlement. *See* Fed. R. Civ. P. 23(h) and 54(d)(2).

---

[4]     Workers who worked for AMF for shorter periods will not receive a settlement payment and will not release their claims.

[5]     This is a typical fee award in the Second Circuit. *Stefaniak v. HSBC Bank USA, N.A.*, No. 05-CV-720, 2008 U.S. Dist. LEXIS 53872, at *10 (W.D.N.Y. June 28, 2008) (a fee award of "33% of the Settlement Fund is typical in class action settlements in the Second Circuit"); *Gilliam v. Addicts Rehab. Ctr. Fund*, No. 05 Civ. 3452, 2008 U.S. Dist. LEXIS 23016, at *15 (S.D.N.Y. Mar. 24, 2008) ("counsel is entitled to one-third of the common fund after deduction of legal costs, which is consistent with the norms of class litigation in this circuit").

VI.     **Service Awards**

Under the Settlement Agreement, in addition to their individualized awards under the allocation formula, and subject to Court approval, Plaintiff Robert O'Dell will receive an additional payment of $5,000, and Plaintiffs Alicia Perez, Francisco Diaz, and Anabel Diaz will each receive an additional payment of $2,500.  These payments are in recognition of the services they rendered on behalf of the class ("Service Awards").  (Ex. C (Stlmt. Agmt.) ¶ 3.3.)  Their services included informing Counsel of the facts initially and as the case progressed, searching for relevant documents in their possession, and providing factual and other assistance leading up to and during the mediation process.  Plaintiffs will move for Court approval of the Service Awards simultaneously with Plaintiffs' Motion for Final Approval of the Settlement.

VII.    **Settlement Claims Administrator**

Under the Settlement Agreement, Settlement Services, Inc. of Tallahassee, Florida will serve as the Claims Administrator ("Claims Administrator").  (*Id.* ¶ 2.1.)  The Claims Administrator's fees will be paid by AMF.  (*Id.*)

VIII.   **Injunctive Relief**

In addition to monetary relief, AMF has agreed to injunctive relief which, subject to Court approval, will remain in effect for two years from the date of the execution of the Settlement Agreement.  The injunctive relief is as follows:

1.     AMF will not require that workers at the Traditional or 300 Centers share tips or gratuities for food and beverage customer payments with general managers, shift leaders (when performing shift leader duties), team leaders, sales managers, sales coordinators, janitors, mechanics, cooks (at 300 Centers only), counter/desk attendants, training, bowling center administrators, star trainers, league coordinators, food preparers, food and beverage trainers, playroom assistants, and training in general, and will prohibit all persons in those job categories from sharing in a tip pool;

2.     AMF will pay all tips received for food and beverage goods and services solely to employees working as Lane Captains, Lane Servers, Lane Attendants, Lounge

Attendants, Food & Beverage Attendants, Runners, and/or Bartenders at the Centers;

3.  AMF will revise any written policies governing tip sharing in New York State to conform with the foregoing;

4.  AMF will comply with the New York Labor Law with respect to the sharing of tips; and

5.  AMF will not retaliate against any employees for their participation in this Litigation and/or Settlement, provided that AMF's ability to discipline its employees for legitimate, non-retaliatory reasons – including, but not limited to, based on performance issues and rule or policy violations – shall not be impaired.

(*Id.* ¶ 3.6(A).)

## CLASS ACTION SETTLEMENT PROCEDURE

Courts have established a defined procedure and specific criteria for settlement approval in class action settlements, which include three distinct steps:

1.  Preliminary approval of the proposed settlement after submission to the Court of a written motion for preliminary approval and certification of the settlement class;

2.  Dissemination of mailed and/or published notice of settlement to all affected Class members; and

3.  A final settlement approval hearing at which class members may be heard regarding the settlement, and at which argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented.

*See* Fed. R. Civ. P. 23(e); *see also* Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* ("*Newberg*"), §§ 11.22, *et seq.* (4th ed. 2002).  This process safeguards class members' procedural due process rights and enables the court to fulfill its role as the guardian of class interests.

With this motion, Plaintiffs request that the Court take the first step – granting preliminary approval of the Settlement Agreement, provisionally certifying the settlement class, and approving Plaintiffs' Proposed Notice and authorizing them to send it.  Two other courts in the Southern District recently granted final approval of a settlement similar to this one.  *Reyes v.*

*Buddha-Bar NYC*, No. 08 Civ. 2494, 2009 U.S. Dist. LEXIS 45277, at **8-9 (S.D.N.Y. May 28,

2009); *Mohney v. Shelly's Prime Steak Stone Crab & Oyster Bar*, No. 06 Civ. 4270, 2009 U.S.

Dist. LEXIS 27899, at **12-13 (S.D.N.Y. Mar. 31, 2009).

The parties respectfully submit the following proposed schedule for final resolution of

this matter for the Court's consideration and approval:

1.    The Proposed Notice will be mailed to class members within 5 days after the Order Granting Preliminary Approval.

2.    Class members will have 30 days after the date the Proposed Notice is mailed to opt out of the settlement or object to it ("Notice Period").

3.    Plaintiffs will file a Motion for Final Approval of Settlement within 15 days of the fairness hearing.

4.    A final fairness hearing will be held as soon as is convenient for the Court.

5.    After the final fairness hearing, if the Court grants Plaintiffs' Motion for Final Approval of the Settlement, the Court will issue a Final Order and Judgment. If no party appeals the Court's Final Order and Judgment, the effective date of the settlement will be 30 days after the Court enters its Final Order and Judgment ("Effective Date").

6.    If a party appeals the Court's Final Order and Judgment, the Effective Date of Settlement shall be the day after all appeals are finally resolved.

7.    The Claims Administrator will disburse the payment of settlement funds to the class members, Class Counsel's attorneys' fees and expenses, and the Plaintiffs' Service Awards within 5 days after the Effective Date.

## ARGUMENT

## I.    Preliminary Approval of the Settlement Is Appropriate

The law favors compromise and settlement of class action suits. *Wal-Mart Stores, Inc. v.*

*Visa U.S.A. Inc*., 396 F.3d 96, 116 (2d Cir. 2005) (noting the "strong judicial policy in favor of

settlements, particularly in the class action context") (internal quotation marks omitted); *In re*

*Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004) ("there is an overriding

public interest in settling class action litigation, and it should therefore be encouraged"); *see also Newberg* § 11.41 ("The compromise of complex litigation is encouraged by the courts and favored by public policy.")

The approval of a proposed class action settlement is a matter of discretion for the trial court. *Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1079 (2d Cir. 1995). In exercising this discretion, courts should give "proper deference to the private consensual decision of the parties." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998).

Preliminary approval requires only an "initial evaluation" of the fairness of the proposed settlement on the basis of written submissions and an informal presentation by the settling parties. *Newberg* § 11.25. The court need only find that there is "'probable cause' to submit the [settlement] to class members and hold a full-scale hearing as to its fairness." *In re Traffic Executive Ass'n*, 627 F.2d 631, 634 (2d Cir. 1980); *Newberg* § 11.25 ("If the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness . . . and appears to fall within the range of possible approval," the court should permit notice of the settlement to be sent to class members).

"Fairness is determined upon review of both the terms of the settlement agreement and the negotiating process that led to such agreement." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 184 (W.D.N.Y. 2005). "A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores*, 396 F.3d at 116 (internal quotation marks omitted); *Wright v. Stern*, 553 F. Supp. 2d 337, 343 (S.D.N.Y. 2008) (same). Absent evidence of fraud or collusion, where a settlement is achieved through arm's-length negotiations by experienced counsel, "[courts] should be hesitant to substitute [their] judgment for that of the

parties who negotiated the settlement." *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, No. 05 Civ. 10240, 2007 U.S. Dist. LEXIS 57918, at *12 (S.D.N.Y. July 27, 2007).

This first step in the settlement process simply allows notice to issue to the class and for class members to object or opt-out of the settlement. After the notice period, the Court will be able to evaluate the settlement with the benefit of the class members' input.

### A.    The Settlement is Fair, Reasonable, and Adequate

In evaluating a class action settlement, courts in the Second Circuit consider the nine factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), *abrogated on other grounds by Goldberg v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000). Although the Court need not evaluate the *Grinnell* factors in order to conduct its initial evaluation of the settlement, it might be useful for the Court to consider the criteria on which it will ultimately judge the settlement.

The *Grinnell* factors are: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. 495 F.2d at 463. All of the *Grinnell* factors weigh in favor of approval of the Settlement Agreement, and certainly in favor of preliminary approval.

1.    **Litigation Through Trial Would be Complex, Costly, and Long**
       (*Grinnell* **Factor 1**)

By reaching a favorable settlement prior to dispositive motions or trial, Plaintiffs seek to avoid significant expense and delay, and ensure a speedy, risk-free recovery for the class.  "Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them."  *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000), *aff'd sub. nom. D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001).  This case is no exception, with approximately 1,604 putative class members and two sets of claims under state law.

Although there has been significant informal discovery, (Swartz Dec. ¶¶ 13-17), additional discovery would be required to establish liability and damages, including depositions of Plaintiffs, AMF managers, and industry experts.  A fact-intensive trial would be necessary, with extensive testimony by Defendant, Plaintiffs, class members, and experts.  Preparing and putting on evidence at such a trial would consume tremendous amounts of time and resources and demand substantial judicial resources.  A trial on damages, even on a representative basis, would be costly and would further defer closure.  Any judgment would likely be appealed, thereby extending the duration of the litigation.  This settlement, on the other hand, makes monetary relief available to class members in a prompt and efficient manner.  Therefore, the first *Grinnell* factor weighs in favor of preliminary approval.

2.    **The Reaction of the Class Has Been Positive**
       (*Grinnell* **Factor 2**)

Although notice of the settlement has not yet issued to the class, all four Named Plaintiffs have expressed their support of the settlement by signing the Settlement Agreement.  The Court

can fully analyze this factor only after notice issues and Class Members have had an opportunity to weigh in.

### 3.    Discovery Has Advanced Far Enough to Allow the Parties to Responsibly Resolve the Case (*Grinnell* Factor 3)

The parties have completed enough discovery to recommend settlement.  The pertinent question is "whether counsel had an adequate appreciation of the merits of the case before negotiating."  *Warfarin*, 391 F.3d at 537.  "The pretrial negotiations and discovery must be sufficiently adversarial that they are not designed to justify a settlement . . . [but] an aggressive effort to ferret out facts helpful to the prosecution of the suit."  *In re Austrian & German Bank Holocaust Litig*, 80 F. Supp. 2d at 176 (internal quotation marks omitted).  The parties' discovery here meets this standard.  Plaintiffs obtained substantial document discovery from AMF, including tip and gratuity allocation data, event contracts and invoices, and job descriptions of tip ineligible employees.  The parties also engaged in a full day of mediation during which they advocated their positions and engaged in vigorous back and forth regarding their respective claims and defenses.

Based on these circumstances, the parties were well-equipped to evaluate the strengths and weaknesses of the case.  *See Frank*, 228 F.R.D. at 185 (approving settlement of case "in relatively early stages of discovery" where parties had exchanged extensive information pertaining to the identities of class members and to Defendant's time and pay practices and where counsels' negotiations, while "cooperative," had "been in no way collusive").  This factor also weighs in favor of preliminary approval.

**4.    Plaintiffs Would Face Real Risks if the Case Proceeded (*Grinnell* Factors 4 and 5)**

Although Plaintiffs' case is strong, it is not without risk.  In weighing the risks of establishing liability and damages, the court "must only weigh the likelihood of success by the plaintiff class against the relief offered by the settlement."  *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 177 (internal quotation marks omitted).  A trial on the merits would involve significant risk as to both liability and damages because of the fact-intensive nature of proving Plaintiffs' NYLL claims.

With respect to both tip claims, Plaintiffs may face challenges proving that some of the positions to which AMF allocated tips are tip-ineligible under the NYLL.  The inquiry will be fact-intensive and involve extensive testimony by both parties regarding the duties performed by allegedly tip ineligible employees.  With respect to the mandatory gratuity claim, Plaintiffs may have difficulty proving that AMF's customers believed that the gratuities were meant for the hourly food service workers who staffed the events and not for sales representatives, party planners, and other non-food and beverage employees who helped to coordinate the events.  Even if Plaintiffs were successful at trial, AMF would likely appeal.

While Plaintiffs believe that they could ultimately establish AMF's liability, this would require significant factual development and favorable outcomes at trial and on appeal, both of which are inherently uncertain and lengthy.  The proposed settlement alleviates this uncertainty.  This factor weighs in favor of preliminary approval.

**5.    Establishing a Class and Maintaining it Through Trial Would Not Be Simple (*Grinnell* Factor 6)**

The risk of maintaining the class status through trial is also present.  The Court has not yet certified the class and such a determination would likely be reached only after exhaustive

13

briefing by both parties.  AMF may argue that individual questions, including whether particular customers believed that the mandatory gratuities were meant for particular food and beverage workers and whether duties varied across bowling center locations, preclude class certification. They also may argue that a class action is not a superior method to resolve Plaintiffs' claims and that a class trial would not be manageable.

Should the Court certify the class, AMF would later challenge certification and move to decertify, forcing another round of briefing.  AMF may also seek permission to file an interlocutory appeal under Fed. R. Civ. P. 23(f).  Risk, expense, and delay permeate such a process.  Settlement eliminates this risk, expense, and delay.  This factor favors preliminary approval.

### 6.    AMF's Ability to Withstand a Greater Judgment Is Not Assured (*Grinnell* Factor 7)

Even if AMF could withstand a greater judgment, a "defendant's ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair." *Frank*, 228 F.R.D. at 186 (quoting *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 178 n.9).  Here, the Settlement Agreement eliminates the risk of collection by requiring AMF to pay the Fund into escrow on September 15, 2009, even before final approval.  (Ex. C (Stlmt. Agmt.) ¶ 3.1(B).)  Accordingly, this factor also favors preliminary approval.

### 7.    The Settlement Fund is Substantial in Light of the Possible Recovery and the Attendant Risks of Litigation (*Grinnell* Factors 8 and 9)

The $670,000 settlement amount represents a substantial value – approximately 63% of the estimated damages if Plaintiffs prevailed at trial on all claims and survived an appeal.  The chart below estimates approximate awards that Traditional Center and 300 Center employees would receive under the settlement:

|  | ONE MONTH | TEN MONTHS | 1.5 YEARS | 3 YEARS | 6 YEARS |
|---|---|---|---|---|---|
| **Trad'l Centers** | N/A | $15 | $27 | $54 | $106 |
| **300 Center (Chelsea Piers)** | $90 | $797 | $1438 | $2880 | $5778 |
| **300 Center (Melville)** | $30 | $282 | $500 | $1000 | $1590 |

Weighing the benefits of the settlement against the risks associated with proceeding in the litigation, the settlement amount is more than reasonable. "[T]here is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery." *Grinnell Corp.*, 495 F.2d at 455 n.2. "It is well-settled that a cash settlement amounting to only a fraction of the potential recovery will not *per se* render the settlement inadequate or unfair." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 628 (9th Cir. 1982); *see Cagan v. Anchor Sav. Bank FSB*, No. 88 Civ. 3024, 1990 U.S. Dist. LEXIS 11450, at **34-35 (E.D.N.Y. May 17, 1990) (approving $2.3 million class settlement over objections that the "best possible recovery would be approximately $121 million"); *Brooks v. Am. Export Indus., Inc.*, No. 71 Civ. 5128, 1977 U.S. Dist. LEXIS 17313, at **16-18 (S.D.N.Y. Feb. 17, 1977) (approving settlement of less than 1% of the best possible recovery). The determination of whether a settlement amount is reasonable "does not involve the use of a 'mathematical equation yielding a particularized sum.'" *Frank*, 228 F.R.D. at 186 (quoting *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 178). "Instead, 'there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'" *Id.* (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)).

Moreover, when settlement assures immediate payment of substantial amounts to class members, "even if it means sacrificing 'speculative payment of hypothetically larger amount

years down the road,'" settlement is reasonable under this factor. *See Gilliam,* 2008 U.S. Dist.

LEXIS 23016, at \*5 (quoting *Teachers' Ret. Sys. of Louisiana v. A.C.L.N. Ltd.*, No. 01 Civ.

11814, 2004 U.S. Dist. LEXIS 8608, at \*16 (S.D.N.Y. May 14, 2004)).

The injunctive relief offered by this settlement also has substantial value for current (and

future) employees of AMF.  AMF will be obligated to change its tip and mandatory gratuity

policies to ensure that only food and beverage workers receive customer tips.

*      *      *

The *Grinnell* factors all weigh in favor of approval.  If class member objections raise new

issues, the Court may evaluate whether they bear on the *Grinnell* factors.  At this point, however,

the Court can easily find that settlement on its face, is "'fair, adequate, and reasonable, and not a

product of collusion,'" *Frank*, 228 F.R.D. at 184 (quoting *Joel A. v. Giuliani*, 218 F.3d 132, 138-

39 (2d Cir. 2000)), and grant preliminary approval.

## II.    Conditional Certification of the Rule 23 Class Is Appropriate

Plaintiffs respectfully request that the Court conditionally certify the following Fed. R.

Civ. P. 23 class for purposes of effectuating the settlement:

(a)    All persons who have worked at least 1 month as Lane Captains, Lane Servers, Lane Attendants, Lounge Attendants, Food & Beverage Attendants, Runners and/or Bartenders at the AMF "300 Center" bowling alleys located at Chelsea Piers in New York, NY and/or in Melville, Long Island, at any time between January 27, 2003 and June 12, 2009; and

(b)    All persons who have worked at least 10 months as Lane Captains, Lane Servers, Lane Attendants, Lounge Attendants, Food & Beverage Attendants, Runners and/or Bartenders at the AMF "Traditional Center" bowling alleys located in New York State, at any time between January 27, 2003 and June 12, 2009.

The Court should determine that the proposed settlement class satisfies Rule 23(a)'s

requirements of numerosity, commonality, typicality, and adequacy of representation, and at

least one of the subsections of Rule 23(b), *see Amchem Prods., Inc. v. Windsor*, 521 U.S. 591,

620 (1997); *Hanlon*, 150 F.3d at 1019, and provisionally certify the settlement classes, and appoint Plaintiffs' counsel as class counsel and the Named Plaintiffs as class representatives.

As discussed below, all of the certification requirements for settlement purposes are met and AMF consents to provisional certification.  (Ex. C (Stlmt. Agmt.) ¶ 2.2.)  *See also Newberg* § 11.27 ("When the court has not yet entered a formal order determining that the action may be maintained as a class action, the parties may stipulate that it be maintained as a class action for the purpose of settlement only"); *County of Suffolk v. Long Island Lighting Co*., 710 F. Supp. 1422, 1424 (E.D.N.Y. 1989) ("It is appropriate for the parties to a class action suit to negotiate a proposed settlement of the action prior to certification of the class"), *aff'd in part, rev'd in part on other grounds*, 907 F.2d 1295 (2d Cir. 1990).

Provisional settlement approval, class certification, and appointment of class counsel have practical purposes, including avoiding the costs of litigating class status while facilitating a global settlement, ensuring notification of all class members of the terms of the proposed Settlement Agreement, and setting the date and time of the final approval hearing.  *See In re Gen. Motors Corp. Pick-up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 784 (3d Cir. 1995).

Under Rule 23(a), a class action may be maintained if all of the prongs of Rule 23(a) are met, as well as one of the prongs of Rule 23(b).  Rule 23(a) requires that:

> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).  Rule 23(b)(3) requires the court to find that:

> questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

Fed. R. Civ. P. 23(b)(3).

### A.    Numerosity

Numerosity is satisfied when the class is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "Impracticable does not mean impossible." *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993). "[N]umerosity is presumed at a level of 40 members." *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995). Here, Plaintiffs easily satisfy the numerosity requirement because there are approximately 1,604 members of the Rule 23 class.

### B.    Commonality

The proposed class also satisfies the commonality requirement, the purpose of which is to test "whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982). Although the claims need not be identical, they must share common questions of fact or law. *Frank*, 228 F.R.D. at 181. There must be a "unifying thread" among the claims to warrant class certification. *Kamean v. Local 363, Int'l Bhd. of Teamsters*, 109 F.R.D. 391, 394 (S.D.N.Y. 1986). Courts construe the commonality requirement liberally. *Frank*, 228 F.R.D. at 181.

This case involves common factual and legal issues – whether AMF misappropriated mandatory gratuities and voluntary tips by unlawfully distributing a portion of each to non-tip eligible employees. *See Buddha-Bar NYC*, 2009 U.S. Dist. LEXIS 45277, at *6; *Mohney*, 2009 U.S. Dist. LEXIS 27899, at **10-11. These alleged tip violations – involving common operative

facts stemming from corporate policies that affected the class members in the same way – are sufficient to meet Rule 23(a)'s commonality factor.  *See id.*

## C.    Typicality

Typicality is also satisfied.  "Like the commonality requirement, typicality does not require the representative party's claims to be identical to those of all class members."  *Frank*, 228 F.R.D. at 182; *Milonas v. Williams*, 691 F.2d 931, 938 (10th Cir. 1982).  Typicality is satisfied "when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability."  *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997) (internal quotation marks omitted).  "Minor variations in the fact patterns underlying individual claims" do not defeat typicality when the defendant directs "the same unlawful conduct" at the named plaintiffs and the class.  *Robidoux*, 987 F.2d at 936-37.  Courts evaluate typicality "with reference to the company's actions, not with respect to particularized defenses it might have against certain class members."  *Trinidad v. Breakaway Courier Sys., Inc.,* 05 Civ. 4116, 2007 U.S. Dist. LEXIS 2914, at *15 (S.D.N.Y. Jan. 12, 2007) (quoting *Wagner v. NutraSweet Co.*, 95 F.3d 527, 534 (7th Cir. 1996)).

The Named Plaintiffs' claims arise from the same factual and legal circumstances that form the bases of the Rule 23 class members' claims.  The Named Plaintiffs had the same principal job duties as the class members.  They also suffered the same injuries as the class members as a result of AMF's tip allocation policies.  *See Buddha-Bar NYC*, 2009 U.S. Dist. LEXIS 45277, at *6; *Mohney*, 2009 U.S. Dist. LEXIS 27899, at **10-11.

## D.    Adequacy of the Named Plaintiffs

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  "The adequacy requirement exists to ensure

that the class representatives will have an interest in vigorously pursuing the claims of the class, and . . . have no interests antagonistic to the interests of other class members." *Toure v. Cent. Parking Sys.*, No. 05 Civ. 5237, 2007 U.S. Dist. LEXIS 74056, at **18-19 (S.D.N.Y. Sept. 28, 2007) (internal quotation marks omitted).  "[O]nly a conflict that goes to the very subject matter of the litigation will defeat a party's claim of representative status."  *Dziennik v. Sealift, Inc.*, No. 05 Civ. 4659, 2007 U.S. Dist. LEXIS 38701, at *19 (E.D.N.Y. May 29, 2007) (internal quotation marks omitted).  The Named Plaintiffs and the class members have no antagonistic interests.[6]

### E.    Certification is Proper Under Rule 23(b)(3)

Rule 23(b)(3) requires that the common questions of law or fact "predominate over any questions affecting only individual members and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."  Fed. R. Civ. P. 23(b)(3). This inquiry examines "whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  *Amchem*, 521 U.S. at 623.  Satisfaction of Rule 23(a) "goes a long way toward satisfying the Rule 23(b)(3) requirement of commonality."  *Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590, 598 (2d Cir. 1986).

#### 1.    Common Questions Predominate

Predominance requires that "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, . . . predominate over those issues that are subject only to individualized proof."  *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 136 (2d Cir. 2001).  The essential inquiry is whether "liability can be determined on a class-

---

[6]    Two of the Named Plaintiffs – Robert O'Dell and Alicia Perez – have individual discrimination claims against AMF that are unrelated to this lawsuit.  Mr. O'Dell is negotiating the settlement of his claims in a separate agreement with AMF.  Ms. Perez has filed a separate individual lawsuit against AMF and is not represented by putative Class Counsel in that matter. (Swartz Dec. ¶ 21 n.1.)

wide basis, even when there are some individualized damage issues." *In re Visa Check*, 280 F.3d at 139. Where plaintiffs are "unified by a common legal theory" and by common facts, the predominance requirement is satisfied. *McBean v. City of New York*, 228 F.R.D. 487, 502 (S.D.N.Y. 2005).

Here, all members of the class are unified by common factual allegations – that all class members worked for AMF as hourly food and beverage workers and were not paid a portion of the mandatory gratuities and voluntary tips that AMF's customers paid. They are also unified by a common legal theory – that AMF's tip appropriation policies violate New York law. *See Buddha-Bar NYC*, 2009 U.S. Dist. LEXIS 45277, at **7-8; *Mohney*, 2009 U.S. Dist. LEXIS 27899, at *12.

The only individualized issues pertain to the calculation of damages. However, individualized damages calculations do not defeat the Rule 23(b)(3) predominance requirement. *See Frank*, 228 F.R.D. at 183 (collecting cases holding that calculation of damages in wage and hour litigation does not impact the predominance analysis).

### 2. A Class Action is a Superior Mechanism

Rule 23(b)(3)'s second part analyzes whether "the class action device [is] superior to other methods available for a fair and efficient adjudication of the controversy." *Green v. Wolf Corp.*, 406 F.2d 291, 301 (2d Cir. 1968). Rule 23(b)(3) sets forth a non-exclusive list of relevant factors, including whether individual class members wish to bring, or have already brought, individual actions; and the desirability of concentrating the litigation of the claims in the particular forum. Fed. R. Civ. P. 23(b)(3).[7]

---

[7]    Another factor, whether the case would be manageable as a class action at trial, is not of consequence in the context of a proposed settlement. *See Amchem*, 521 U.S. at 620 ("[c]onfronted with a request for settlement-only class certification, a [trial] court need not

Here, Plaintiffs and the class members have limited financial resources with which to prosecute individual actions, and Plaintiffs are unaware of any individual lawsuits that have been filed by class members arising from the same allegations. Concentrating the litigation in this Court is desirable because some of the allegedly wrongful conduct occurred within the jurisdiction of this Court.

Employing the class device here will achieve economies of scale for putative class members, conserve judicial resources, and preserve public confidence in the system by avoiding repetitive proceedings and preventing inconsistent adjudications. *See Hanlon*, 150 F.3d at 1023.

## III. Plaintiffs' Counsel Should Be Appointed as Class Counsel

Outten & Golden LLP and Fitapelli & Schaffer, LLP (together, "Plaintiffs' Counsel") should be appointed as class counsel. Rule 23(g), which governs the appointment of class counsel for a certified class, sets forth four criteria courts must consider in evaluating the adequacy of proposed counsel: (1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions and claims of the type asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources counsel will commit to representing the class. Fed. R. Civ. P. 23(g)(1)(C)(i). The Court may also consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class. Fed. R. Civ. P. 23(g)(1)(C)(ii). "No single factor should necessarily be determinative in a given case." Fed. R. Civ. P. 23(g) advisory committee's note.

---

inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial"); *Frank*, 228 F.R.D. at 183 ("The court need not consider the [manageability] factor, however, when the class is being certified solely for the purpose of settlement."). Moreover, denying class certification on manageability grounds is "disfavored" and "should be the exception rather than the rule." *In re Visa Check*, 280 F.3d at 140 (internal quotation omitted).

Plaintiffs' Counsel meet all relevant criteria.  They did substantial work identifying, investigating, prosecuting, and settling the claims; have substantial experience prosecuting and settling wage and hour class actions; and are well-versed in wage and hour law and in class action law and are well-qualified to represent the interests of the class.  (Swartz Dec. ¶¶ 6-10, 13-17.)  Courts have repeatedly found Plaintiffs' Counsel to be adequate class counsel in wage and hour class actions.[8]

## IV.    The Proposed Class Notice is Appropriate

### A.    The Proposed Class Notice Satisfies Due Process

The content of the Proposed Notice, which is attached to the Notice of Motion as Exhibit A, fully complies with due process and Fed. R. Civ. P. 23.  Pursuant to Rule 23(c)(2)(B), the notice must provide:

> the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice must concisely and clearly state in plain, easily understood language: the nature of the action; the definition of the class certified; the class claims, issues, or defenses; that a class member may enter an appearance through counsel if the member so desires; that the court will exclude from the class any member who requests exclusion, stating when and how members may elect to be excluded; and the binding effect of a class judgment on class members under Rule 23(c)(3).

The Proposed Notice here satisfies each of these requirements.  It also describes the terms of the settlement, informs the class about the allocation of attorneys' fees, and provides specific information regarding the date, time, and place of the final approval hearing, and how to object or exclude oneself or participate in the settlement.  This information is adequate to put class

---

[8]    *See, e.g., Westerfield v. Wash. Mut. Bank*, No. 08 Civ. 00287, 2009 U.S. Dist. LEXIS 54553, at **9-10 (S.D.N.Y. June 26, 2009); *Buddha-Bar NYC*, 2009 U.S. Dist. LEXIS 45277, at **10-11; *Mohney*, 2009 U.S. Dist. LEXIS 27899, at **14-16.; *Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152, 165 (S.D.N.Y. 2008) (appointing Outten & Golden as class counsel on the basis of its "experience[] in handling wage and hour class actions and . . . knowledge of the applicable law").

members on notice of the proposed settlement and is well within the requirements of Rule 23(c)(2)(B).  Courts in this district have approved class notices that are very similar to the one proposed by Plaintiffs.  *See, e.g., Reyes v. Buddha-Bar NYC*, 08 Civ. 2494, 2009 U.S. Dist. LEXIS 27852, at **8-9, 11-21 (S.D.N.Y. Jan. 29, 2009).

   **B.**  **The Notice Plan and Award Distribution Process Are Appropriate**

   The Settlement Agreement provides that notice will be mailed individually by the Claims Administrator to the last known address of each class member within 5 days of the Court's grant of preliminary approval.  (Ex. C (Stlmt. Agmt.) ¶ 2.3(B).)  The Claims Administrator will trace all returned undeliverable notices and re-send to the most recent addresses available.  (*Id.* ¶)

   Class members will have 30 days from the date of mailing to submit opt-out requests or to comment on or object to the settlement.  (*Id.* ¶¶ 2.4(A), 2.6(A).)  Within 5 days of final approval of the settlement or, if there is an appeal of the grant of final approval, within 5 days after all appeals are resolved in favor of final approval, the Claims Administrator will send class members their payments.  (*Id.* ¶ 3.1(D).)

**CONCLUSION**

   For the reasons set forth above, Plaintiffs respectfully request that the Court grant their Motion for Preliminary Approval of Settlement, Certification of the Settlement Class, Appointment of Plaintiffs' Counsel as Class Counsel, and Approval of the Proposed Notice of Settlement, and enter the Proposed Order.

Dated:        New York, New York
              August 28, 2009

                        Respectfully submitted,

                        **OUTTEN & GOLDEN LLP**
                        By:

                        /s/ Justin M. Swartz
                        Justin M. Swartz (JS 7989)

                        **OUTTEN & GOLDEN LLP**
                        Justin M. Swartz (JS 7989)
                        Linda A. Neilan (LN 4095)
                        Rachel Bien (RB 6919)
                        3 Park Avenue, 29th Floor
                        New York, New York 10016
                        Telephone:  (212) 245-1000

                        **FITAPELLI & SCHAFFER, LLP**
                        Joseph A. Fitapelli (JAF 9058)
                        Brian S. Schaffer (BSS 7548)
                        1250 Broadway, Suite 3701
                        New York, New York 10001
                        Telephone:  (212)300-0375

                        **Attorneys for Plaintiffs and the Putative Class**