UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
ROBERT O'DELL, FRANCISCO DIAZ, ANABEL DIAZ,    09 CIV 759 (DLC)
and ALICIA PEREZ, on behalf of themselves and all others
similarly situated,

Plaintiffs,

-against-

**JOINT SETTLEMENT
AND RELEASE**

AMF BOWLING CENTERS, INC.

Defendant.
-------------------------------------------------------------------X


This Joint Stipulation of Settlement and Release (collectively, the "Agreement"), is entered into by and between Plaintiffs (as hereinafter defined) and the class of individuals that they seek to represent (as hereinafter defined), on the one hand, and Defendant (as hereinafter defined).

**RECITALS**

WHEREAS, Robert O'Dell, Alicia Perez, Francisco Diaz and Anabel Diaz ("Plaintiffs") filed a Class Action Complaint against AMF Bowling Centers, Inc. ("AMF") on January 27, 2009; and then an Amended Complaint on March 4, 2009 (the "Complaint").

WHEREAS, the Complaint asserted class claims under New York Labor Law § 196-d and sought recovery of, among other things, tips and gratuities that AMF allegedly failed to pay to the class members, at its bowling centers located in New York State (the "Centers"), which include two "300 Centers" and additional "Traditional Centers," and attorneys' fees and costs, as well as injunctive and declaratory relief under the New York Labor Law; and

WHEREAS, Defendant denies and continues to deny all of the allegations made by Plaintiffs in the Litigation (as hereinafter defined) and have denied and continue to deny that they are liable or owe damages, fees or costs, to anyone with respect to the alleged facts or causes of action asserted in the Litigation to any members of the putative class. Nonetheless, without admitting or conceding any liability or damages whatsoever, Defendant has agreed to settle the Litigation on the terms and conditions set forth in this Agreement, to avoid the burden, expense, and uncertainty of continuing the Litigation; and

WHEREAS, Class Counsel (as hereinafter defined) has investigated and prosecuted this case, including, but not limited to, interviewing putative class members, reviewing documents produced by AMF, and reviewing and analyzing payroll and tip allocation data; and

WHEREAS, the Parties participated in a mediation session of this matter on June 12, 2009, which was conducted by Michael Young of JAMS, a well-known employment mediator; and

WHEREAS, Class Counsel has analyzed and evaluated the merits of the claims made against AMF in the Litigation, and the impact of this Agreement on Plaintiffs and the Class (as hereinafter defined); and

WHEREAS, based upon their analysis and their evaluation of a number of factors, and recognizing the substantial risks of continued litigation, including the possibility that the Litigation, if not settled now, might not result in any recovery whatsoever for the Class, or might result in a recovery that is less favorable to the Class, and that would not occur for several years, Class Counsel is satisfied that the terms and conditions of this Agreement are fair, reasonable and adequate and that this Agreement is in the best interests of the Class.

NOW, THEREFORE, in consideration of the mutual covenants and promises set forth in this Agreement, as well as the good and valuable consideration provided for herein, the Parties hereto agree to a full and complete settlement of the Litigation on the following terms and conditions:

## 1.    DEFINITIONS

The defined terms set forth herein shall have the meanings ascribed to them below.

1.1    **Plaintiffs.** "Plaintiffs" shall refer to the named plaintiffs in this action, Robert O'Dell, Alicia Perez, Francisco Diaz, and Anabel Diaz and shall also include any and all representatives, heirs, administrators, executors, beneficiaries, agents, and assigns of such individuals, as applicable and without limitation.

1.2    **Defendant.** "Defendant" shall mean AMF Bowling Centers, Inc.

1.3    **Centers.** "Centers" shall refer to any bowling facilities operated by AMF in New York State during the covered period as defined below. The Centers located at Chelsea Piers in New York, New York, and in Melville, Long Island shall be defined as "300 Centers." All other Centers located throughout New York State shall be defined as "Traditional Centers."

1.4    **Class; Class Member.** "Class" shall mean (1) all persons who are or were employed by AMF and have worked at least 10 months as Lane Captains, Lane Servers, Lane Attendants, Lounge Attendants, Food & Beverage Attendants, Runners and/or Bartenders at Traditional Centers between January 27, 2003 and June 12, 2009, and (2) all persons who have worked at least 1 month as Lane Captains, Lane Servers, Lane Attendants, Lounge Attendants, Food & Beverage Attendants, Runners and/or Bartenders at 300 Centers between January 27, 2003 and June 12, 2009. A member of the Class is a "Class Member." Class Members shall include persons who worked at either or both Traditional Centers and 300 Centers during the Covered Period.

2

1.5    **Claims Administrator.** "Claims Administrator" shall mean Settlement Services Inc., which is the entity jointly selected by the Parties to provide notice to the Class and administer payment of claims submitted by Class Members.

1.6    **Class Counsel.** "Class Counsel" shall mean Outten & Golden LLP and Fitapelli & Schaffer, LLP.

1.7    **Court.** "Court" shall mean to the United States District Court for the Southern District of New York, the Honorable Denise L. Cote presiding.

1.8    **Covered Period.** "Covered Period" shall mean the period from January 27, 2003 to June 12, 2009.

1.9    **Defendant's Counsel.** "Defendant's Counsel" shall mean Ivan Smith, Peter T. Shapiro and Sabrina Tann, Lewis Bribois Bisgaard & Smith LLP. For purposes of providing any notices required under this Agreement, Defendant's Counsel shall refer to Peter T. Shapiro, Lewis Brisbois Bisgaard & Smith LLP, 199 Water Street, 25th Floor, New York, New York 10038.

1.10   **Effective; Effective Date.** "Effective" shall mean the occurrence of all of the following, and "Effective Date" shall be the date that all of the following have occurred:

(A)    the Court has entered Judgment and ruled on the motions for awards of service payments for Plaintiffs pursuant to Section 3.3 and for attorneys' fees and reasonable costs pursuant to Section 3.2; and

(B)    the Judgment and the rulings on such motions have become Final. "Final" means the later of:

(1)    The time for seeking rehearing or reconsideration and/or appellate review has expired and there is no one with standing to seek such review; or

(2)    If rehearing, reconsideration and appellate review is sought, after any and all avenues of rehearing, reconsideration and appellate review have been exhausted and no further rehearing, reconsideration or appellate review is permitted, and the time for seeking such review has expired, and the Judgment and rulings on service awards and attorneys' fees and reasonable costs have not been modified, amended or reversed in any way.

1.11   **Escrow Account.** "Escrow Account" shall mean the interest-bearing account created and controlled by the Claims Administrator.

1.12   **Fairness Hearing.** "Fairness Hearing" shall mean the hearing on the Motion for Judgment and Final Approval.

1.13  **Litigation.** "Litigation" shall mean *O'Dell v. AMF Bowling Centers, Inc.*, Case No. 09 Civ. 759 (DLC), pending in the United States District Court for the Southern District of New York.

1.14  **Mediator's Fees.** "Mediator's Fees" shall mean the fees charged by Michael Young of JAMS for the mediation session held on June 12, 2009, and related services.

1.15  **Net Settlement Payment.** "Net Settlement Payment" shall mean the remainder of the Settlement Payment after court-approved attorneys' fees and costs as described in Section 3.2, court-approved service payments to Plaintiffs as described in Section 3.3, any fees associated with investing and liquidating the Settlement Payment as described in Section 3.1(B), and any taxes incurred directly or indirectly as a result of investing the Settlement Payment.

1.16  **Order Granting Final Approval.** "Order Granting Final Approval" shall mean the final Order entered by the Court after the Fairness Hearing.

1.17  **Order Granting Preliminary Approval.** "Order Granting Preliminary Approval" shall mean the Order entered by the Court preliminarily approving, *inter alia*, the terms and conditions of this Agreement, the manner and timing of providing notice to the Class, and the time period for opt-outs and objections.

1.18  **Parties.** "Parties" shall mean Plaintiffs, the Class, and Defendant.

1.19  **Qualified Class Member.** "Qualified Class Member" shall mean a Class Member who does not opt out.

1.20  **Settlement Payment.** "Settlement Payment" shall mean the $670,000 payment, plus any interest accrued as provided in Section 3.1(B), that Defendant pays to settle the Litigation as described in Section 3.1.

## 2.  APPROVAL AND CLASS NOTICE

2.1  **Retention of Claims Administrator.** Within 5 calendar days after the execution of this Agreement, the Parties shall retain Settlement Services Inc. to administer the claims process. The Claims Administrator shall be responsible for the claims administration process and distribution to Qualified Class Members as provided herein. Defendant agrees to cooperate with the Claims Administrator and assist it in any way possible in administering the settlement. Defendant shall pay all of the Claims Administrator's fees, in addition to the Settlement Payment.

2.2  **Preliminary Approval by the Court.** On or before August 28, 2009, Plaintiffs will submit to the Court a Motion for an Order Conditionally Certifying the Settlement Class and Preliminarily Approving the Class Action Settlement, a proposed Notice of Settlement of the Class Action Lawsuit and Fairness Hearing,

and a proposed Order Preliminarily Approving the Settlement. Plaintiffs will seek, and Defendant will not oppose, conditional certification of the following classes:

(a) "300 Center Class":

All persons who have worked at least 1 month as Lane Captains, Lane Servers, Lane Attendants, Lounge Attendants, Food & Beverage Attendants, Runners and/or Bartenders at the AMF "300 Center" bowling alleys located at Chelsea Piers in New York, NY and/or in Melville, Long Island, at any time between January 27, 2003 and June 12, 2009.

(b) "Traditional Center Class":

All persons who have worked at least 10 months as Lane Captains, Lane Servers, Lane Attendants, Lounge Attendants, Food & Beverage Attendants, Runners and/or Bartenders at the AMF "Traditional Center" bowling alleys located in New York State, at any time between January 27, 2003 and June 12, 2009.

If the Court denies the Motion for Conditional Certification of the Settlement Class and Preliminary Approval of the Class Action Settlement, then the Litigation will resume unless the Parties jointly agree to seek reconsideration of the ruling or seek Court approval of a renegotiated settlement. If a mutually agreed class settlement is not approved, the case will proceed as if no settlement had been attempted, and Defendant retains the right to contest whether this case should be maintained as a class action and to contest the merits of the claims being asserted by Plaintiffs in this Litigation. In such a case, the Parties will negotiate and submit for Court approval a case schedule which shall, among other things, propose deadlines for Plaintiffs' Motion for Class Certification.

2.3 **Class Notice**

(A) Within 5 calendar days of the date set forth in Section 2.1, Plaintiff will provide the Claims Administrator with a list, in electronic form, of the names, last known addresses, dates of employment, telephone numbers, and social security numbers of all Class Members.

(B) Within 5 calendar days of the Court's Order Granting Preliminary Approval, the Claims Administrator shall mail, via First Class United States mail, postage prepaid, the Notice of Proposed Settlement of Class Action Lawsuit and Fairness Hearing to all Class Members using each individual's last known address as recorded in Defendant's records. The Claims Administrator shall take reasonable steps to obtain the correct address of any Class Members for whom the notice is returned by the post office as undeliverable and shall attempt re-mailings as described below. The Claims Administrator shall notify Class Counsel and Defendant's Counsel of any mail sent to Class Members that is returned as undeliverable after the first mailing as well as any such mail returned as undeliverable after any subsequent mailing(s) as set forth in Section 2.4.

Defendant shall have no further obligation to search for Class Members who are former employees for whom the notice is returned because the last known address on file with Defendant is no longer current. The Claims Administrator shall provide Class Counsel with information related to the administration of the settlement upon request.

2.4    **Class Member Opt-Out.**

(A)    Any Class Member may request exclusion from the Class by "opting out." Class Members who choose to do so must mail a written, signed statement to the Claims Administrator that he or she is opting out of the Settlement ("Opt-Out Statement"). To be effective, such Opt-Out Statements must be sent via First Class United States Mail and postmarked by a date certain to be specified on the Notice of Proposed Class Action Lawsuit and Fairness Hearing, which will be 30 calendar days after the Claims Administrator mails the Notice. The 30 day period will begin to run from the first mailing, except for those Class Members whose first mailing was returned to the Claims Administrator as undeliverable, in which case the 30 day period for any such Class Member will begin to run from the date of the second mailing (or, if there are more than 2 mailings, the final mailing) to such Class Member. The Claims Administrator shall not attempt more than three mailings of the Notice of Proposed Class Action Lawsuit and Fairness Hearing to any Class Member. The end of the "Opt-Out Period" shall be 30 calendar days after the last day on which the Claims Administrator makes a mailing. The Claims Administrator shall, within 10 calendar days after the last day on which it makes such a mailing, notify Class Counsel and Defendant's Counsel in writing by email and overnight delivery of the precise date of the end of the Opt-Out Period.

(B)    The Claims Administrator shall stamp the postmark date on the original of each Opt-Out Statement that it receives and shall serve copies of each Statement on Class Counsel and Defendant's Counsel not later than 3 calendar days after receipt thereof. The Claims Administrator also shall, within 3 calendar days of the end of the Opt-Out Period, file with the Clerk of Court, stamped copies of any Opt-Out Statements. The Claims Administrator shall, within 24 hours of the end of the Opt-Out Period, send a final list of all Opt-Out Statements to Class Counsel and Defendant's Counsel by both email and overnight delivery. The Claims Administrator shall retain the stamped originals of all Opt-Out Statements and originals of all envelopes accompanying Opt-Out Statements in its files until such time as the Claims Administrator is relieved of its duties and responsibilities under this Stipulation.

2.5    **Release.** A Class Member who does not opt out pursuant to Section 2.4 will be deemed eligible for a payment hereunder. Payments will be made by check issued by the Claims Administrator. All checks issued to Class Members shall contain, on the back of the check, the following limited endorsement:

2.9 **Effect of Failure to Grant Final Approval.** In the event the Court fails to enter Judgment in accordance with this Agreement, or such Judgment does not become Final as defined herein, the Parties shall proceed as follows: The Litigation will resume unless the Parties jointly agree to: (1) seek reconsideration or appellate review of the decision denying entry of Judgment, or (2) attempt to renegotiate the settlement and seek Court approval of the renegotiated settlement. In the event any reconsideration and/or appellate review is denied, or a mutually agreed-upon settlement is not approved:

(A) The Litigation will proceed as if no settlement had been attempted. In that event, the class certified for purposes of settlement shall be decertified, and Defendant retains the right to contest whether this Litigation should be maintained as a class action and to contest the merits of the claims being asserted by Plaintiffs in this action. In such a case, the Parties will negotiate and submit for Court approval a case schedule which shall, among other things, propose deadlines for Plaintiffs' Motion for Class Certification.

(B) The Court will provide notice to Class Members that the Agreement did not receive final approval and that, as a result, no payments will be made to Class Members under the Agreement. Such notice shall be mailed by the Claims Administrator via First Class United States Mail, postage prepaid, to the addresses used by the Claims Administrator in mailing the Notice of Proposed Settlement of Class Action Lawsuit and Fairness Hearing.

(C) All proposed mailings shall be paid for by Defendant.

3. **SETTLEMENT TERMS**

3.1 **Settlement Payment.**

(A) Defendant agrees to pay $670,000, which shall resolve and satisfy any claim for attorneys' fees and costs approved by the Court, any and all amounts to be paid to Class Members, and any court-approved service payments to Plaintiffs. Other than the employer payroll taxes as described in Section 3.5(C), the Claims Administrator's fees as described in Section 2.1, and its 50% share of the Mediator's Fees as described in Section 1.14, Defendant will not be required to pay more than $670,000 under the Agreement.

(B) By no later than September 15, 2009, Defendant shall deposit $670,000 into the Escrow Account. Any interest accrued from the Escrow Account, net of taxes and any fees associated with investing such amount, shall immediately be added to and become part of the Settlement Payment. Notwithstanding the foregoing, if the Court does not preliminarily approve the settlement by November 1, 2009, any interest accrued from the Escrow Account after November 1, 2009 shall be divided equally between Defendant and the Class Members, with half going to Defendant and half becoming part of the Settlement Payment.

By endorsing this check, I release Defendant AMF Bowling Centers, Inc. from all New York Labor Law claims for misappropriated tips that were alleged in this lawsuit, interest on such claims, and attorneys' fees and costs related to such claims.

2.6     **Objections to Settlement.**

(A)     Class Members who wish to present objections to the proposed settlement at the Fairness Hearing must first do so in writing. To be considered, such statement must be sent to the Claims Administrator via First-Class United States mail, postage prepaid, and be received by the Claims Administrator by a date certain, to be specified on the Notice of Proposed Class Action Lawsuit and Fairness Hearing, which shall be for each Class Member 30 days after the Claims Administrator mails such Notice to such Class Member. The Claims Administrator shall stamp the date received on the original of each objection, and send copies of each objection to Class Counsel and Defendant's Counsel by email and overnight delivery not later than 3 calendar days after receipt thereof. The Claims Administrator shall also file the date-stamped originals of any and all objections with the Clerk of Court within three calendar days after the end of the Opt-Out Period.

(B)     An objector also has the right to appear at the Fairness Hearing either in person or through counsel hired by the objector. An objector who wishes to appear at the Fairness Hearing must state his or her intention to do so at the time he/she submits his/her written objections. An objector may withdraw his/her objections at any time. No Class Member may appear at the Fairness Hearing unless he or she has filed a timely objection that complies with the procedures provided in Section 2.6(A). Any Class Member who has submitted an Opt-Out Form may not submit objections to the settlement.

(C)     The Parties may file with the Court written responses to any filed objections not later than 15 calendar days before the Fairness Hearing.

2.7     **Motion for Judgment and Final Approval.** Not later than 15 calendar days before the Fairness Hearing, Plaintiffs will submit a Motion for Judgment and Final Approval. The Fairness Hearing shall be held at the Court's convenience.

2.8     **Entry of Judgment.** At the Fairness Hearing, the Parties will request that the Court, among other things, (a) certify the Class for purposes of settlement, (b) enter Judgment in accordance with this Agreement, (c) approve the settlement and Agreement as final, fair, reasonable, adequate, and binding on all Class Members who have not timely opted out pursuant to Section 2.4(A), (d) dismiss the Litigation with prejudice, and (e) enter an order permanently enjoining all Class Members who do not opt out from pursuing and/or seeking to reopen claims that have been released by this Agreement.

(C)     If payments to Class Members as described in Sections 3.1(D) and 3.4 are not cashed within 90 days of the check date, the checks will be null and void and the money will remain in the Escrow Account.  In the event that there is more than $20,000 in the Escrow Account 90 days after the payments described in Sections 3.1(D) and 3.4 have been distributed, the Claims Administrator shall redistribute the money among Qualified Class Members in pro-rata payments based on the formula described in Section 3.4(B).  In the event that there is less than $20,000 in the Escrow Account 90 days after the payments described in Sections 3.1(D) and 3.4 have been distributed, the money will be donated to the Legal Aid Society.  There will be no reversion to Defendant.

(D)     Within 5 days of the Effective Date, the Claims Administrator will distribute the money in the Escrow Account by making the following payments:

   (1)     Paying Class Counsel court-approved fees as described in Section 3.2(A).

   (2)     Reimbursing Class Counsel all costs and expenses approved by the Court as described in Section 3.2(A).

   (3)     Paying the amounts described in Section 3.3.

   (4)     Paying Class Members their payments as described in Section 3.4.

3.2    **Settlement Amounts Payable as Attorneys' Fees and Costs.**

(A)     At the Fairness Hearing, Class Counsel shall petition the Court for no more than 33% of the Settlement Payment as an award of attorneys' fees.  In addition, Class Counsel shall also seek reimbursement of reasonable litigation costs and expenses from the Settlement Payment, which shall not exceed $20,000.  Defendant will not oppose such a fee and cost application.  Defendant shall have no additional liability for fees and costs, including without limitation, administrative costs, expert fees and costs, or attorneys' fees and costs, except for the employer payroll taxes as described in Section 3.5(C), the fees and expenses of the Claims Administrator as described in Section 2.1, and the 50% share of the Mediator's Fees as described in Section 1.14.

(B)     The substance of Class Counsel's application for attorneys' fees and costs is not part of this Agreement and is to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy, and good faith of the settlement of the Litigation.  The outcome of any proceeding related to Class Counsel's application for attorneys' fees and costs shall not terminate this Agreement, extinguish any party's obligations under this Agreement, or otherwise affect the Court's ruling on the Motion for Judgment and Final Approval.

3.3    **Payments To Plaintiffs.**  Plaintiffs Robert O'Dell, Alicia Perez, Francisco Diaz, and Anabel Diaz will apply to the Court to receive Settlement Payments for services rendered to the Class.  Plaintiff O'Dell will apply to the Court for no more than

$5,000.00, and Plaintiffs Perez, F. Diaz, and A. Diaz will apply to the Court for no more than $2,500.00 each. Defendant will not oppose such applications. The service payments and the requirements for obtaining such payments are separate and apart from, and in addition to, other recovery to which these Plaintiffs might be entitled, and other requirements for obtaining such recovery, under other provisions of this Agreement. The substance of the above-referenced application for service awards is not part of this Agreement and is to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy, and good faith of the settlement of the Litigation. The outcome of the Court's ruling on the application for service payments shall not terminate this Agreement or otherwise affect the Court's ruling on the Motion for Judgment and Final Approval.

3.4 **Distribution to Class Members.**

(A) A Class Member who does not opt out pursuant to Section 2.4(A) will be deemed eligible for a payment hereunder, subject to the release set forth in Section 4.1(A).

(B) Qualified Class Members' proportionate shares of the Settlement Payment less any amounts approved by the Court under Sections 2.1, 3.2, and 3.3 ("Net Settlement Payment") shall be determined by the Claims Administrator according to the following formula:

    (1) Traditional Center Qualified Class Members.

        (a) From the Net Settlement Payment, $50,000 shall be distributed to Qualified Class Members who worked at Traditional Center locations. Each Qualified Class Member shall be assigned one point for each week worked between January 27, 2003 and June 12, 2009.

        (b) To calculate each Traditional Center Qualified Class Member's proportionate share:

            (i) Add all points for Traditional Center Qualified Class Members together to obtain the "Total Traditional Center Denominator;"

            (ii) Divide the number of points for each Traditional Center Qualified Class Member by the Total Traditional Center Denominator to obtain each Traditional Center Qualified Class Member's "Portion of the Traditional Center Net Settlement Fund."

            (iii) Multiply each Traditional Center Qualified Class Member's Portion of the Traditional Center Net Settlement Fund by the Net Tradition Center Settlement Fund to determine each

Traditional Center Qualified Class Member's "Settlement Award."

(2)    300 Center Qualified Class Members.

    (a)    The remainder of the Net Settlement Payment shall be distributed to Qualified Class Members who worked at the 300 Center locations – Chelsea Piers and Melville.  Ninety percent of the Net Settlement Payment shall be allocated to Qualified Class Members who worked at the Chelsea Piers 300 Center ("Net Chelsea Piers 300 Center Settlement Fund") and ten percent of the Net Settlement Payment shall be allocated to Qualified Class Members who worked at the Melville 300 Center ("Net Melville 300 Center Settlement Fund").

    (b)    Each Qualified Class Member who worked at the 300 Center locations shall be assigned one point for each week worked in a covered position between January 27, 2003 and June 12, 2009.

        (i)    To calculate each Chelsea Piers 300 Center Qualified Class Member's proportionate share:

            A)    Add all points for Chelsea Piers 300 Center Qualified Class Members together to obtain the "Total Chelsea Piers 300 Center Denominator;"

            B)    Divide the number of points for each Chelsea Piers 300 Center Qualified Class Member by the Total Chelsea Piers 300 Center Denominator to obtain each Chelsea Piers 300 Center Qualified Class Member's "Portion of the Net Chelsea Piers 300 Center Settlement Fund."

            C)    Multiply each Chelsea Piers 300 Center Qualified Class Member's Portion of the Net Chelsea Piers 300 Center Settlement Fund by the Net Chelsea Piers 300 Center Settlement Fund to determine each Chelsea Piers 300 Center Qualified Class Member's "Settlement Award."

        (ii)    To calculate each Melville 300 Center Qualified Class Member's proportionate share:

            A)    Add all points for Melville 300 Center Qualified Class Members together to obtain the "Total Melville 300 Center Denominator;"

B)      Divide the number of points for each Melville 300 Center Qualified Class Member by the Total Melville 300 Center Denominator to obtain each Melville 300 Center Qualified Class Member's "Portion of the Net Melville 300 Center Settlement Fund."

C)      Multiply each Melville 300 Center Qualified Class Member's Portion of the Net Melville 300 Center Settlement Fund by the Net Melville 300 Center Settlement Fund to determine each Melville 300 Center Qualified Class Member's "Settlement Award."

The Claims Administrator's decisions regarding Qualified Class Members' proportionate shares of the Settlement Payment will be final and binding.

(C)      Defendant and the Claims Administrator shall exchange such information as is necessary for the Claims Administrator to make proper tax withholdings and comply with tax reporting obligations as described in Section 3.5. Defendant will provide such information sufficiently in advance to allow the Claims Administrator to send out settlement checks on schedule and provide appropriate tax reporting.

(D)      Using the contact information provided by Plaintiffs (*see* Section 2.3(A)), the Claims Administrator shall mail to all Qualified Class Members their payment of their proportionate share within five days of the Effective Date. The Claims Administrator shall use reasonable efforts to make an additional mailing to Qualified Class Members whose checks are returned because of incorrect addresses. Such efforts shall include using social security numbers to obtain better address information and, for Qualified Class Members whose payments are greater than $100, attempting to call such Qualified Class Members. Any additional efforts undertaken shall be in the sole discretion of the Claims Administrator.

3.5      **Taxability of Settlement Payments.**

(A)      For tax purposes, 50% of payments to Qualified Class Members pursuant to Section 3.4 shall be treated as back wages and 50% of such payments shall be treated as interest.

(B)      Payments treated as back wages pursuant to Section 3.5(A) shall be made net of all applicable employment taxes, including, without limitation, federal, state and local income tax withholding and the employee share of the FICA tax, and shall be reported to the Internal Revenue Service ("IRS") and the payee under the payee's name and social security number on an IRS Form W-2. Payments treated as interest pursuant to Section 3.5(A) shall be made without withholding and shall

be reported to the IRS and the payee, to the extent required by law, under the payee's name and social security number on an IRS Form 1099. Payments of attorneys' fees and costs pursuant to Section 3.2 shall be made without withholding and reported to the IRS and the payee under the payee's name and taxpayer identification number, which each such payee shall provide for this purpose, on an IRS Form 1099. Any service payments pursuant to Section 3.3 shall be made without withholding and reported to the IRS and the payee under the payee's name and social security number on an IRS Form 1099.

(C)    Defendant shall pay all state and federal payroll taxes imposed by applicable law, including the employer's share of the FICA tax and any federal and state unemployment tax due, with respect to the amounts treated as wages pursuant to Section 3.5(A).

(D)    Plaintiffs, on behalf of the Class and each individual member of the Class, acknowledge and agree that each individual Class Member will be solely responsible for all taxes, interest and penalties due with respect to any payment received pursuant to this Agreement (other than taxes specified in Section 3.5(C)) and will indemnify, defend and hold Defendant and the Claims Administrator harmless from and against any and all taxes, interest, penalties, attorneys' fees and other costs imposed on Defendant or the Claims Administrator as a result of a Class Member's failure to timely pay such taxes. Plaintiffs, on behalf of the Class and each individual member of the Class, acknowledge and agree that they have not relied upon any advice from Defendant as to the taxability of the payments received pursuant to this Agreement.

3.6    **Injunctive Relief**

(A)    Defendant agrees to the following relief for a period of two years from the date that the Parties execute this Agreement. This relief shall be subject to the approval and continuing jurisdiction of the United States District Court for the Southern District of New York during the two-year period.

(1)    Defendant will not require that workers at the Centers share tips or gratuities for food and beverage customer payments with any person who at the time is employed by AMF at a Center as a General Manager, Shift Leader (when performing Shift Leader duties), Team Leader, Sales Manager, Sales Coordinator, Janitor, Mechanic, Cook (at 300 Centers only), Counter/desk Attendant, Training, Bowling Center Administrator, Star Trainer, League Coordinator, Food Preparer, Food and Beverage Trainer, Playroom Assistant, and any training position in general ("Non-eligible employees"), and will prohibit all persons in those job categories from sharing in a tip pool;

(2)    Defendant will pay all tips received for food and beverage goods and services solely to employees working as Lane Captains, Lane Servers,

Lane Attendants, Lounge Attendants, Food & Beverage Attendants, Runners, and/or Bartenders at the Centers;

(3)    Defendant will revise any written policies governing tip sharing in New York State to conform with the foregoing;

(4)    Defendant will comply with the New York Labor Law with respect to the sharing of tips; and

(5)    Defendant will not retaliate against any employees for their participation in this Litigation and/or Settlement, provided that Defendant's ability to discipline its employees for legitimate, non-retaliatory reasons – including, but not limited to, based on performance issues and rule or policy violations – shall not be impaired.

## 4.    RELEASE

### 4.1    Release of Claims.

By operation of the entry of the Judgment and Final Approval, and except as to such rights or claims as may be created by this Agreement, Plaintiffs and each individual Qualified Class Member forever and fully release Defendant from all New York Labor Law claims asserted in the Amended Class Action Complaint through June 12, 2009 ("Released Claims"). The Released Claims include all New York Labor Law claims for misappropriated tips, interest on such claims, and attorneys' fees and costs related to such claims.

### 4.2    Release of Fees and Costs for Settled Matters.    Class Counsel and Plaintiffs, on behalf of the Class and each individual Qualified Class Member, hereby irrevocably and unconditionally release, acquit, and forever discharge any claim that they may have against Defendant for attorneys' fees or costs associated with Class Counsel's representation of Plaintiffs and the Class.    Class Counsel further understand and agree that any fee payments approved by the Court will be the full, final and complete payment of all attorneys' fees and costs associated with Class Counsel's representation of these individuals.

### 4.3    No Assignment.    Class Counsel and Plaintiffs, on behalf of the Class and each individual Class Member, represent and warrant that they have not assigned or transferred, or purported to assign or transfer, to any person or entity, any claim or any portion thereof or interest therein, including, but not limited to, any interest in the Litigation, or any related action.

### 4.4    Non-Admission of Liability.    By entering into this Agreement, Defendant in no way admits any violation of law or any liability whatsoever to Plaintiffs and/or the Class, individually or collectively, all such liability being expressly denied. Likewise, by entering into this Agreement, Defendant in no way admits to the suitability of this case for class action litigation other than for purposes of

settlement. Rather, Defendant enters into this Agreement to avoid further protracted litigation and to resolve and settle all disputes with Plaintiffs and the Class. Settlement of the Litigation, negotiation and execution of this Agreement, and all acts performed or documents executed pursuant to or in furtherance of this Agreement or the settlement: (a) are not, shall not be deemed to be, and may not be used as an admission or evidence of any wrongdoing or liability on the part of Defendant or of the truth of any of the factual allegations in any and all Complaints filed in the Lawsuit; (b) are not, shall not be deemed to be, and may not be used as an admission or evidence of fault or omission on the part of Defendant in any civil, criminal, administrative or arbitral proceeding; and (c) are not, shall not be deemed to be, and may not be used as an admission or evidence of the appropriateness of these or similar claims for class certification or administration or collective action treatment other than for purposes of administering this Agreement. The Parties understand and agree that this Agreement is a settlement document and shall be inadmissible in evidence in any proceeding, except an action or proceeding to approve, interpret, or enforce the terms of the Agreement.

## 5. MISCELLANEOUS

5.1 **Cooperation Between the Parties; Further Acts.** The Parties shall cooperate fully with each other and shall use their best efforts to obtain the Court's approval of this Agreement and all of its terms. Each of the Parties, upon the request of any other party, agrees to perform such further acts and to execute and deliver such other documents as are reasonably necessary to carry out the provisions of this Agreement.

5.2 **Entire Agreement.** This Agreement constitutes the entire agreement between the Parties with regard to the subject matter contained herein, and all prior and contemporaneous negotiations and understandings between the Parties shall be deemed merged into this Agreement. The parties acknowledge that they have not relied on any promises, representations or discussions extrinsic to this Agreement in agreeing to execute this Agreement.

5.3 **Binding Effect.** This Agreement shall be binding upon the Parties and, with respect to Plaintiffs and the Class Members, their spouses, children, representatives, heirs, administrators, executors, beneficiaries, conservators, attorneys and assigns.

5.4 **Arm's Length Transaction; Materiality of Terms.** The Parties have negotiated all the terms and conditions of this Agreement at arm's length. All terms and conditions of this Agreement in the exact form set forth in this Agreement are material to this Agreement and have been relied upon by the Parties in entering into this Agreement.

5.5 **Captions.** The captions or headings of the sections and paragraphs of this Agreement have been inserted for convenience of reference only and shall have no effect upon the construction or interpretation of any part of this Agreement.

5.6 **Construction.** The determination of the terms and conditions of this Agreement has been by mutual agreement of the Parties. Each party participated jointly in the drafting of this Agreement, and therefore the terms and conditions of this Agreement are not intended to be, and shall not be, construed against any party by virtue of draftsmanship.

5.7 **Blue Penciling.** Following the Effective Date, if any provision of this Agreement is held by a court of competent jurisdiction to be void, voidable, unlawful or unenforceable, the remaining portions of this Agreement will remain in full force and effect.

5.8 **Governing Law.** This Agreement shall in all respects be interpreted, enforced and governed by and under the laws of the State of New York, without regard to choice of law principles, except to the extent that the law of the United States governs any matter set forth herein, in which case such federal law shall govern.

5.9 **Continuing Jurisdiction.** The Court shall retain jurisdiction over the interpretation and implementation of this Agreement as well as any and all matters arising out of, or related to, the interpretation or implementation of this Agreement and of the settlement contemplated thereby. The Court shall not have jurisdiction to modify the terms of the Agreement or to increase Defendant's payment obligations hereunder.

5.10 **Waivers, etc. to Be in Writing.** No waiver, modification or amendment of the terms of this Agreement, whether purportedly made before or after the Court's approval of this Agreement, shall be valid or binding unless in writing, signed by or on behalf of all Parties and then only to the extent set forth in such written waiver, modification or amendment, subject to any required Court approval. Any failure by any party to insist upon the strict performance by the other party of any of the provisions of this Agreement shall not be deemed a waiver of future performance of the same provisions or of any of the other provisions of this Agreement, and such party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Agreement.

5.11 **When Agreement Becomes Effective; Counterparts.** This Agreement shall become effective upon its execution. The Parties may execute this Agreement in counterparts, and execution in counterparts shall have the same force and effect as if Plaintiffs and Defendant had signed the same instrument.

5.12 **Facsimile Signatures.** Any party may execute this Agreement by causing its counsel to sign on the designated signature block below and transmitting that signature page via facsimile to counsel for the other party. Any signature made and transmitted by facsimile for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the party whose counsel transmits the signature page by facsimile.

DATED:  August 28, 2009          AMF Bowling Centers, Inc.

                                 By: _____
                                         Daniel M. McCormack

                                 Its: _____General Counsel_____

DATED:  August ___, 2009         Robert O'Dell

                                 _____

DATED: August ___, 2009          Alicia Perez

                                 _____

DATED:  August ___, 2009         Francisco Diaz

                                 _____

DATED:  August ___, 2009         Anabel Diaz

                                 _____

DATED:  August __, 2009          AMF Bowling Centers, Inc.

By: _____

Its: _____

DATED:  August __, 2009          Robert O'Dell

_____

DATED:  August __, 2009          Alicia Perez

_____

DATED:  August __, 2009          Francisco Diaz

_____

DATED:  August __, 2009          Anabel Diaz

_____

17

DATED: August __, 2009          AMF Bowling Centers, Inc.

                                  By:        _____

                                    Its:    _____

DATED: August __, 2009          Robert O'Dell

                                    _____

DATED: August 27, 2009          Alicia Perez

                                    _Alicia Perez_ (signature)

DATED: August __, 2009          Francisco Diaz

                                    _____

DATED: August __, 2009          Anabel Diaz

                                    _____

DATED:  August __, 2009          AMF Bowling Centers, Inc.

By:    _____

Its: _____

DATED:  August __, 2009          Robert O'Dell

_____

DATED: August __, 2009          Alicia Perez

_____

DATED:  August 28, 2009          Francisco Diaz

_____

DATED:  August __, 2009          Anabel Diaz

_____

DATED:  August __, 2009          AMF Bowling Centers, Inc.

                                 By: _____

                                 Its: _____

DATED:  August __, 2009          Robert O'Dell

                                 _____

DATED: August __, 2009           Alicia Perez

                                 _____

DATED:  August __, 2009          Francisco Diaz

                                 _____

DATED:  August 27, 2009          Anabel Diaz

                                 _____