**OUTTEN & GOLDEN LLP**                        **FITAPELLI & SCHAFFER, LLP**
Justin M. Swartz (JS 7989)                     Joseph A. Fitapelli (JAF 9058)
Rachel M. Bien (RB 6919)                       Brian S. Schaffer (BSS 7548)
3 Park Avenue, 29th Floor                      1250 Broadway, Suite 3701
New York, New York 10016                       New York, New York 10001
Telephone:  (212) 245-1000                     Telephone:  (212) 300-0375

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **ROBERT O'DELL, FRANCISCO DIAZ, ANABEL DIAZ, and ALICIA PEREZ, on behalf of themselves and all others similarly situated,**<br><br>**Plaintiffs,**<br><br>**-against-**<br><br>**AMF BOWLING CENTERS, INC.,**<br><br>**Defendant.** | **09 Civ. 759 (DLC)** |

## MEMORANDUM OF LAW IN SUPPORT OF
## PLAINTIFFS' MOTION FOR CERTIFICATION OF THE SETTLEMENT CLASS
## AND FINAL APPROVAL OF THE CLASS ACTION SETTLEMENT

## TABLE OF CONTENTS

INTRODUCTION ...................................................................................................1

FACTUAL AND PROCEDURAL BACKGROUND.............................................2

    I.   Procedural History.................................................................................2

    II.  Discovery................................................................................................2

    III.  Settlement Negotiations ........................................................................3

SUMMARY OF THE SETTLEMENT TERMS AND ADMINISTRATION.............3

    I.   The Settlement Fund .............................................................................3

    II.  Release...................................................................................................4

    III.  Eligible Employees................................................................................4

    IV.  Allocation Formula................................................................................5

    V.   Attorneys' Fees, Litigation Costs, and Service Awards........................5

    VI.  Settlement Claims Administration .........................................................6

    VII. Injunctive Relief ...................................................................................7

ARGUMENT ........................................................................................................7

    I.   The Settlement Class Meets the Legal Standard for Class Certification ............................7

        A.   Numerosity...............................................................................9

        B.   Commonality............................................................................9

        C.   Typicality ................................................................................10

        D.   Adequacy of the Named Plaintiffs .........................................11

        E.   Certification is Proper Under Rule 23(b)(3) ...........................11

            1. Common Questions Predominate .......................................12

            2. A Class Action is a Superior Mechanism .........................12

II.   The Proposed Settlement is Fair, Reasonable, and Adequate and Should be Approved in
      All Respects .................................................................................................................13

      A.   The Proposed Settlement is Procedurally Fair ...........................................................14

      B.   The Proposed Settlement is Substantively Fair .........................................................16

           1.  Litigation Through Trial Would be Complex, Costly, and Long (Grinnell
               Factor 1) .............................................................................................................16

           2.  The Reaction of the Class Has Been Positive (Grinnell Factor 2).......................17

           3.  Discovery Has Advanced Far Enough to Allow the Parties to Resolve the
               Case Responsibly (Grinnell Factor 3)..................................................................18

           4.  Plaintiffs Would Face Real Risks if the Case Proceeded (Grinnell
               Factors 4 and 5).....................................................................................................19

           5.  Establishing a Class and Maintaining it Through Trial Would Not Be
               Simple (Grinnell Factor 6) ...................................................................................20

           6.  AMF's Ability to Withstand a Greater Judgment Is Not Assured
               (Grinnell Factor 7) ...............................................................................................20

           7.  The Settlement Fund is Substantial in Light of the Possible Recovery and the
               Attendant Risks of Litigation (Grinnell Factors 8 and 9) ....................................21

CONCLUSION.......................................................................................................................23

# TABLE OF AUTHORITIES

CASELAW                                                                              Page(s)

*Amchem Prods., Inc. v. Windsor,*
    521 U.S. 591 (1997)........................................................................................8, 11, 13

*Brooks v. Am. Export Indus., Inc.,*
    No. 71 Civ. 5128, 1977 U.S. Dist. LEXIS 17313 (S.D.N.Y. Feb. 17, 1977) .........................21

*Cagan v. Anchor Sav. Bank FSB,*
    No. 88 Civ. 3024, 1990 U.S. Dist. LEXIS 11450 (E.D.N.Y. May 17, 1990).........................21

*City of Detroit v. Grinnell Corp.,*
    495 F.2d 448 (2d Cir. 1974)...........................................................................13, 16, 21

*Consol. Rail Corp. v. Town of Hyde Park,*
    47 F.3d 473 (2d Cir. 1995)....................................................................................9

*D'Amato v. Deutsche Bank,*
    236 F.3d 78 (2d Cir. 2001)..............................................................................13, 14

*Damassia v. Duane Reade, Inc.,*
    No. 04 Civ. 8819, No. 04 Civ. 2295, 2009 U.S. Dist. LEXIS 77489 (S.D.N.Y. July
    27, 2009) .................................................................................................17

*Denney v. Deutsche Bank AG,*
    443 F.3d 252 (2d Cir. 2006)..................................................................................7

*Dziennik v. Sealift, Inc.,*
    No. 05 Civ. 4659, 2007 U.S. Dist. LEXIS 38701 (E.D.N.Y. May 29, 2007).........................11

*Frank v. Eastman Kodak Co.,*
    228 F.R.D. 174 (W.D.N.Y. 2005)................................................................. passim

*Gen. Tel. Co. of Sw. v. Falcon,*
    457 U.S. 147 (1982)............................................................................................9

*Gilliam v. Addicts Rehab. Ctr. Fund,*
    No. 05 Civ. 3452, 2008 U.S. Dist. LEXIS 23016 (S.D.N.Y. Mar. 24, 2008).........................22

*Green v. Wolf Corp.,*
    406 F.2d 291 (2d Cir. 1968)................................................................................12

*Hanlon v. Chrysler Corp.,*
    150 F.3d 1011 (9th Cir. 1998) ..........................................................................8, 13

*In re Austrian & German Bank Holocaust Litig.*,
    80 F. Supp. 2d 164 (S.D.N.Y. 2000)..................................................................16, 19, 20, 21

*In re BankAmerica Corp. Securities Litig.*,
    210 F.R.D. 694 (E.D. Mo. 2002) ...................................................................................14

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*,
    No. 05 Civ. 10240, 2007 U.S. Dist. LEXIS 57918 (S.D.N.Y. July 27, 2007)........................14

*In re Gen. Motors Corp. Pick-up Truck Fuel Tank Prod. Liab. Litig.*,
    55 F.3d 768 (3d Cir. 1995)...............................................................................................8

*In re Ira Haupt & Co.*,
    304 F. Supp. 917 (S.D.N.Y. 1969).................................................................................19

*In re Painewebber Ltd. P'ships Litig.*,
    171 F.R.D. 104 (S.D.N.Y. 1997) ...................................................................................19

*In re Top Tankers, Inc. Sec. Litig.*,
    No. 06 Civ. 13761, 2008 U.S. Dist. LEXIS 58106 (S.D.N.Y. July 31, 2008)........................14

*In re Visa Check/MasterMoney Antitrust Litig.*,
    280 F.3d 124 (2d Cir. 2001)......................................................................................12, 13

*In re Warfarin Sodium Antitrust Litig.*,
    391 F.3d 516 (3d Cir. 2004)...........................................................................................18

*Joel A. v. Giuliani*,
    218 F.3d 132 (2d Cir. 2000)...........................................................................................23

*Kamean v. Local 363, Int'l Bhd. of Teamsters*,
    109 F.R.D. 391 (S.D.N.Y. 1986) .....................................................................................9

*Maley v. Dale Global Techs. Corp.*,
    186 F. Supp. 2d 358 (S.D.N.Y. 2002)............................................................................17

*Marisol A. v. Giuliani*,
    126 F.3d 372 (2d Cir. 1997)........................................................................................9, 10

*McBean v. City of New York*,
    228 F.R.D. 487 (S.D.N.Y. 2005) ...................................................................................12

*Mohney v. Shelly's Prime Steak*,
    No. 06 Civ. 4270, 2009 U.S. Dist. LEXIS 27899 (S.D.N.Y. Mar. 31, 2009)..............10, 12, 15

*Newman v. Stein*,
    464 F.2d 689 (2d Cir. 1972)...........................................................................21

*Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*,
    237 F.R.D. 26 (E.D.N.Y. 2006) .......................................................................9

*RMED Int'l, Inc. v. Sloan's Supermarkets, Inc.*,
    No. 94 Civ. 5587, 2003 U.S. Dist. LEXIS 8239 (S.D.N.Y. May 15, 2003)............17

*Robidoux v. Celani*,
    987 F.2d 931 (2d Cir. 1993).............................................................................10

*Rossini v. Ogilvy & Mather, Inc.*,
    798 F.2d 590 (2d Cir. 1986).............................................................................11

*Spann v. AOL Time Warner, Inc.*,
    No. 02 Civ. 8238, 2005 U.S. Dist. LEXIS 10848 (S.D.N.Y. June 7, 2005)....................14, 21

*Teachers' Ret. Sys. of Louisiana v. A.C.L.N. Ltd.*,
    No. 01 Civ. 11814, 2004 U.S. Dist. LEXIS 8608 (S.D.N.Y. May 14, 2004).........................22

*Toure v. Cent. Parking Sys.*,
    No. 05 Civ. 5237, 2007 U.S. Dist. LEXIS 74056 (S.D.N.Y. Sept. 28, 2007) ........................11

*Velez v. Majik Cleaning Serv., Inc.*,
    No. 03 Civ. 8698, 2007 U.S. Dist. LEXIS 46223 (S.D.N.Y. June 22, 2007) ........................19

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
    396 F.3d 96 (2d Cir. 2005)...............................................................13, 14, 15

*Wright v. Stern*,
    553 F. Supp. 2d 337 (S.D.N.Y. 2008)...............................................................18

**FEDERAL RULES**

Fed. R. Civ. P. 23(a) .....................................................................................9

Fed. R. Civ. P. 23(a)(1).................................................................................9

Fed. R. Civ. P. 23(a)(4).................................................................................11

Fed. R. Civ. P. 23(b)(3)...........................................................................11, 13

Fed. R. Civ. P. 23(e) ...................................................................................13

**TREATISES**

*Manual for Complex Litigation, Third* (1995).............................................................................14

*Newberg on Class Actions* § 11:27 (4th ed. 2002)........................................................................8

## <u>INTRODUCTION</u>

The parties' settlement of this wage and hour class action providing for monetary relief of $670,000 is ready for final Court approval. The settlement resolves all of Plaintiffs' and Class Members' claims. It also satisfies all of the criteria for final approval under federal law.

On September 18, 2009, the Court took the first step in the settlement approval process by granting preliminary approval, directing that notice be served on Class Members, and setting November 6, 2009 as the date for the final fairness hearing. (Declaration of Justin M. Swartz in Support of Plaintiffs' Motion for Certification of Settlement Class and Final Approval of Class Action Settlement ("Swartz Dec.")[1] ¶ 23; Ex. D (Preliminary Approval Order).) On September 25, 2009, the Court granted Plaintiffs' request for an adjournment of the fairness hearing to December 4, 2009, at 11:00 a.m.

On October 12, 2009, Settlement Services Inc. (the "Claims Administrator") mailed the Notice to Class Members. (Swartz Dec. ¶ 28; Ex. F (Declaration of Loree Kovach Re: Settlement Administration ("Kovach Dec.") ¶ 5.) The Claims Administrator remailed the Notice to all Class Members whose Notices were returned for whom an updated address could be located. (Ex. F (Kovach Dec.) ¶¶ 6-7.) Accordingly, the members of the class have been notified of the terms of the settlement, the monetary relief, the allocation formula, and their right to opt out of or object to the settlement. Not a single member of the class objected to the settlement and only one has opted out of it. (Swartz Dec. ¶ 29; Ex. F (Kovach Dec.) ¶ 8.) With such overwhelming support, and for the reasons stated below, the Court should grant final approval.

---

[1]     Unless otherwise indicated, all exhibits are attached to the Declaration of Justin M. Swartz.

Plaintiffs submit this Memorandum of Law in support of their Motion for Certification of Settlement Class and Final Approval of the Class Action Settlement ("Plaintiffs' Motion for Final Approval"), pursuant to Federal Rule of Civil Procedure 23(e), for an order approving as fair, reasonable, and adequate the class-wide settlement of this action, as set forth in the Joint Settlement and Release ("Settlement Agreement") attached as Exhibit C to the Swartz Dec.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.    Procedural History

The Plaintiffs are former and current hourly food service workers – Lane Captains, Lane Servers, Lane Attendants, Lounge Attendants, Food & Beverage Attendants, Runners and Bartenders – at AMF Bowling Centers, Inc. ("AMF" or "Defendant"), the world's largest owner and operator of bowling centers.  On January 27, 2009, Plaintiff Robert O'Dell commenced this action as a putative class action under Federal Rule of Civil Procedure 23, bringing a claim under the New York Labor Law ("NYLL") for the misappropriation of mandatory gratuities that AMF charged its event customers.  (Swartz Dec. ¶ 4.)  On March 4, 2009, Mr. O'Dell amended his Complaint, adding an additional tip misappropriation claim for tips paid voluntarily by non-event or "Open Bowling" customers.  (*Id.* at ¶ 5.)  Francisco Diaz, Anabel Diaz, and Alicia Perez also joined the lawsuit as Named Plaintiffs.  (*Id.*)

### II.    Discovery

The parties engaged in substantial informal discovery before agreeing to resolve this case.  (*Id.* at ¶ 6.)  AMF produced documents and data requested by Plaintiffs, including a sampling of event invoices covering the 6-year statute of limitations period, data showing the allocation of tips and mandatory gratuities by position for the entire 6-year period, job descriptions of positions which Plaintiffs claimed were tip ineligible, and memoranda describing

2

AMF's tip policies.  (*Id.* at ¶ 6.)   In addition to electronic and paper discovery, Plaintiffs'

counsel obtained factual information from the Named Plaintiffs regarding their job duties and the

job duties of AMF's employees whom Plaintiffs alleged were ineligible for tips, as well as

Defendant's policies and procedures for allocating tips.  (*Id.* at ¶ 10.)

**III.     Settlement Negotiations**

Instead of spending significant resources litigating this relatively small case, and to

manage the risk of loss, the parties agreed to participate in private, non-binding mediation to

attempt to resolve this case.  The parties hired Michael D. Young of JAMS, a well-known

employment mediator.  (*Id.* at ¶ 11.)  The parties attended a full day of mediation on June 12,

2009, at the conclusion of which they reached agreement on the material terms of a settlement.

(*Id.* at ¶ 12.)  Over the next 10 weeks, the parties negotiated the other terms of the settlement,

including the timing and allocation of the payments.  (*Id.* at ¶ 13.)  On August 27 and 28, 2009,

the parties executed the Settlement Agreement.  (*Id.* at ¶ 14; Ex. C (Settlement Agreement).)

**SUMMARY OF THE SETTLEMENT TERMS AND ADMINISTRATION**

**I.     The Settlement Fund**

The Settlement Agreement creates a fund of $670,000 (the "Fund").  The Fund covers

Class Members' awards, interest, service payments, and attorneys' fees and costs.  (Swartz Dec.

¶ 16; Ex. C (Settlement Agreement) ¶ 3.1(A).)  AMF is responsible for the cost of administrating

the settlement and for the employer's share of all payroll taxes. (Swartz Dec. ¶ 16; Ex. C

(Settlement Agreement) ¶¶ 2.1, 3.5(C).)  None of the Fund reverts to AMF.  (Swartz Dec. ¶ 16;

Ex. C (Settlement Agreement) ¶ 3.1(C).)

II.    **Release**

The Settlement Agreement provides that every Class Member who does not timely opt out of the settlement will release AMF from all NYLL claims for misappropriated tips that were alleged in this lawsuit.  (Ex. C (Settlement Agreement) ¶¶ 2.5, 4.1.)  Class Members had the opportunity to opt out of the settlement by mailing a written, signed statement to the Claims Administrator and to the Clerk of Court.  (Ex. C (Settlement Agreement) ¶ 2.4(A); Ex. E (Official Court Notice of Settlement of Class Action Lawsuit and Fairness Hearing) ("Notice") ¶ 13.)

III.   **Eligible Employees**

The Settlement Agreement entitles two sets of workers to receive payments from the Fund – "300 Center" workers and "Traditional Center" workers.  The 300 Center workers are food and beverage workers who work or worked at AMF's two largest bowling centers at Chelsea Piers in New York City and in Melville, Long Island.  AMF refers to these centers as the "300 Centers."  Both 300 Centers host corporate functions and other large events and generate far more tips and gratuities than do Traditional Centers, which host smaller events and much less frequently.  (Swartz Dec. ¶ 8.)  Between the two 300 Centers, the 300 Center located at Chelsea Piers generated far more tips and gratuities than the 300 Center located in Melville.  (*Id.*)  The Traditional Center workers are food and beverage workers who work or worked at AMF's smaller bowling alleys.

According to AMF's records, the 300 Centers generated approximately 95 percent of the mandatory tips and gratuities paid by AMF's customers.  (*Id.* at ¶ 9.)  The Chelsea Piers location alone generated approximately 90 percent of the tips and gratuities.  (*Id.*)

As a result, the vast majority of the class damages belong to workers at the 300 Center located at Chelsea Piers.

**IV.**     **Allocation Formula**

The Settlement Agreement accounts for the fact that the 300 Center Class Members – in particular, the Chelsea Piers 300 Center Class Members – incurred a disproportionate share of the total damages. Accordingly, the formula allocates $50,000 of the Fund to Traditional Center Class Members. (Swartz Dec. ¶ 19; Ex. C (Settlement Agreement) ¶ 3.4(B)(1)(a).) The remainder of the Fund is divided between Chelsea Piers 300 Center Class Members and Melville 300 Center Class Members, according to the proportion of damages incurred at each location. Under this formula, 90 percent of the remaining Fund will be allocated to Chelsea Piers 300 Center Class Members, and 10 percent will be allocated to Melville Center Class Members. (Swartz Dec. ¶ 20; Ex. C (Settlement Agreement) ¶ 3.4(B)(2)(a).)

For both 300 Center and Traditional Center Class Members, the allocation formula allocates the Fund based on weeks worked. (Swartz Dec. ¶ 18, Ex. C (Settlement Agreement) ¶¶ 3.4(B)(1)(a) and (B)(2)(b).) To ensure that each Class Member receives a meaningful award, the parties have agreed to limit the settlement class to 300 Center workers who worked for AMF for at least one month and Traditional Center workers who worked for AMF for at least 10 months. (Ex. C (Settlement Agreement) ¶ 1.4.) Workers who worked for AMF for shorter periods will not receive a settlement payment and will not release their claims. Fifty percent of each settlement payment will be deemed back wages and fifty percent interest. (*Id.* at ¶ 3.5(A).)

**V.**     **Attorneys' Fees, Litigation Costs, and Service Awards**

Class Counsel have filed a Motion for Approval of Attorneys' Fees and Costs and a Motion for Approval of Class Representatives' Service Awards simultaneously with this Motion.

## VI.    **Settlement Claims Administration**

Settlement Services Inc. of Tallahassee, Florida, has served and will continue to serve as the Claims Administrator.  (Swartz Dec. ¶ 25; Ex. C (Settlement Agreement) ¶ 2.1.)  Settlement Services Inc. has significant experience administering class action settlements, including settlements of wage and hour class and collective actions.  (Swartz Dec. ¶ 25.)  All of the Claims Administrator's fees will be paid by AMF.  (Swartz Dec. ¶ 16; Ex. C (Settlement Agreement) ¶ 2.1.)

On October 12, 2009, the Claims Administrator mailed the Notice to a negotiated list of 1,646 Class Members.  (Swartz Dec. ¶ 28; Ex. F (Kovach Dec.) ¶ 4.)  On October 20 and October 29, 2009, the Claims Administrator received the names and addresses of two additional Class Members who were not included in the initial Notice Mailing and mailed Notices to these two Class Members.  (Ex. F (Kovach Dec.) ¶ 6.)  Of the 1,648 Notices that the Claims Administrator sent out, 212 Notices were returned as undeliverable.  (Ex. F (Kovach Dec.) ¶ 7.)  The U.S. Postal Service provided forwarding addresses for 37 of these undeliverable Notices.  (*Id.*)  The Claims Administrator promptly re-mailed the Notices to the new addresses.  (*Id.*)  For the remaining 175 undeliverable Notices, the Claims Administrator attempted to obtain updated addresses from a locator service and re-mailed the Notice to 174 addresses provided by the locator service.  (*Id.*)  The Claims Administrator could not find updated addresses for 1 Class Members.  (*Id.*)

No Class Member has objected to the settlement.  (*Id.* at ¶ 8.)  One class member, a Traditional Center Class Member, has filed an Opt Out Statement.  (*Id.* at ¶ 8.)

## VII.    Injunctive Relief

In addition to monetary relief, AMF has agreed to meaningful injunctive relief which, subject to Court approval, will remain in effect for two years from the date of the execution of the Settlement Agreement.  The injunctive relief is as follows:

1.    AMF will not require that workers at the Traditional or 300 Centers share tips or gratuities for food and beverage customer payments with general managers, shift leaders (when performing shift leader duties), team leaders, sales managers, sales coordinators, janitors, mechanics, cooks (at 300 Centers only), counter/desk attendants, training, bowling center administrators, star trainers, league coordinators, food preparers, food and beverage trainers, playroom assistants, and training in general, and will prohibit all persons in those job categories from sharing in a tip pool;

2.    AMF will pay all tips received for food and beverage goods and services solely to employees working as Lane Captains, Lane Servers, Lane Attendants, Lounge Attendants, Food & Beverage Attendants, Runners, and/or Bartenders at the Centers;

3.    AMF will revise any written policies governing tip sharing in New York State to conform with the foregoing;

4.    AMF will comply with the New York Labor Law with respect to the sharing of tips; and

5.    AMF will not retaliate against any employees for their participation in this Litigation and/or Settlement, provided that AMF's ability to discipline its employees for legitimate, non-retaliatory reasons – including, but not limited to, based on performance issues and rule or policy violations – shall not be impaired.

(Ex. C (Settlement Agreement) ¶ 3.6(A).)

## ARGUMENT

## I.    The Settlement Class Meets the Legal Standard for Class Certification

When faced with a proposed class settlement, courts first examine whether the settlement class is certifiable.  *Denney v. Deutsche Bank AG,* 443 F.3d 252, 270 (2d Cir. 2006); *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174 (W.D.N.Y. 2005).   On September 18, 2009, having found that Plaintiffs met all of the requirements for class certification

under Federal Rule of Civil Procedure 23(a) and (b)(3), the Court preliminarily certified

the settlement class.  (Ex. D (Preliminary Approval Order) ¶¶ 4-10.)

The Court should now grant final certification of the settlement class because all of the

certification requirements for settlement purposes are met and AMF consents to certification for

settlement purposes.  (Ex. C (Settlement Agreement) ¶ 2.2.)  Plaintiffs respectfully request that

the Court certify the following Class for purposes of effectuating the settlement:

(a)     All persons who have worked at least 1 month as Lane Captains, Lane Servers, Lane
        Attendants, Lounge Attendants, Food & Beverage Attendants, Runners and/or Bartenders
        at the AMF "300 Center" bowling alleys located at Chelsea Piers in New York, NY
        and/or in Melville, Long Island, at any time between January 27, 2003 and June 12, 2009;
        and

(b)     All persons who have worked at least 10 months as Lane Captains, Lane Servers, Lane
        Attendants, Lounge Attendants, Food & Beverage Attendants, Runners and/or Bartenders
        at the AMF "Traditional Center" bowling alleys located in New York State, at any time
        between January 27, 2003 and June 12, 2009.

This Class satisfies Rule 23(a)'s requirements of numerosity, commonality, typicality and

adequacy of representation, and at least one of the subsections of Rule 23(b), *see Amchem*

*Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011,

1019 (9th Cir. 1998); *Newberg on Class Actions* § 11:27 (4th ed. 2002) ("*Newberg*") (citing *In re*

*Gen. Motors Corp. Pick-up Truck Fuel Tank Prod. Liab. Litig.,* 55 F.3d 768 (3d Cir. 1995)).

Under Rule 23(a), a class action may be maintained if all of the prongs of Rule 23(a) are

met, as well as one of the prongs of Rule 23(b).  Rule 23(a) requires that:

(1)     the class is so numerous that joinder of all members is
        impracticable;

(2)     there are questions of law or fact common to the class;

(3)     the claims or defenses of the representative parties are
        typical of the claims or defenses of the class; and

> (4)    the representative parties will fairly and adequately protect
>           the interests of the class.

Fed. R. Civ. P. 23(a).  Rule 23(b)(3) requires the Court to find that:

> questions of law or fact common to the members of the class
> predominate over any questions affecting only individual
> members, and that a class action is superior to other available
> methods for the fair and efficient adjudication of the controversy.

*Id.* at (b)(3).  In the Second Circuit, "Rule 23 is given liberal rather than restrictive construction, and courts are to adopt a standard of flexibility" in evaluating class certification.  *Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*, 237 F.R.D. 26, 31 (E.D.N.Y. 2006) (quoting *Marisol A. v. Giuliani*, 126 F.3d 372, 377 (2d Cir. 1997)).

### A.    Numerosity

Numerosity is satisfied when the class is "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  "[N]umerosity is presumed at a level of 40 members." *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995).  Here, Plaintiffs easily satisfy the numerosity requirement because there are approximately 1,648 members of the Rule 23 class.  (Swartz Dec. ¶ 26.)

### B.    Commonality

The proposed class also satisfies the commonality requirement, the purpose of which is to test "whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence."  *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982).  Although the claims need not be identical, they must share common questions of fact or law.  *Frank*, 228 F.R.D. at 181.  There must be a "unifying thread" among the claims to warrant class certification.  *Kamean v. Local 363, Int'l*

9

*Bhd. of Teamsters*, 109 F.R.D. 391, 394 (S.D.N.Y. 1986). Courts construe the commonality requirement liberally. *Frank*, 228 F.R.D. at 181.

This case involves common factual and legal issues – whether AMF misappropriated mandatory gratuities and voluntary tips by unlawfully distributing a portion of each to employees who Plaintiffs alleged were tip-ineligible. These alleged tip violations – involving common operative facts stemming from corporate policies that affected the class members in the same way – are sufficient to meet Rule 23(a)'s commonality factor. *See Mohney v. Shelly's Prime Steak*, No. 06 Civ. 4270, 2009 U.S. Dist. LEXIS 27899, at *10-11 (S.D.N.Y. Mar. 31, 2009).

## C.     Typicality

Typicality is also satisfied. "Like the commonality requirement, typicality does not require the representative party's claims to be identical to those of all class members." *Frank*, 228 F.R.D. at 182. Typicality is satisfied "when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Marisol A.*, 126 F.3d at 376 (internal quotation marks omitted). "Minor variations in the fact patterns underlying individual claims" do not defeat typicality when the defendant directs "the same unlawful conduct" at the named plaintiffs and the class. *Robidoux v. Celani*, 987 F.2d 931, 936-37 (2d Cir. 1993).

The Named Plaintiffs' claims arise from the same factual and legal circumstances that form the bases of the Rule 23 class members' claims. The Named Plaintiffs had the same principal job duties as the class members. They also suffered the same injuries as the class members as a result of AMF's tip allocation policies. *Mohney*, 2009 U.S. Dist. LEXIS 27899, at *10-11.

**D.     Adequacy of the Named Plaintiffs**

Named Plaintiffs also meet the adequacy requirement.  Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  "The adequacy requirement exists to ensure that the class representatives will have an interest in vigorously pursuing the claims of the class, and . . . have no interests antagonistic to the interests of other class members."  *Toure v. Cent. Parking Sys.*, No. 05 Civ. 5237, 2007 U.S. Dist. LEXIS 74056, at *18-19 (S.D.N.Y. Sept. 28, 2007) (internal quotation marks omitted). "[O]nly a conflict that goes to the very subject matter of the litigation will defeat a party's claim of representative status."  *Dziennik v. Sealift, Inc.*, No. 05 Civ. 4659, 2007 U.S. Dist. LEXIS 38701, at *19 (E.D.N.Y. May 29, 2007) (internal quotation marks omitted).  The Named Plaintiffs and the class members have no antagonistic interests.[2]

**E.     Certification is Proper Under Rule 23(b)(3)**

Rule 23(b)(3) requires that the common questions of law or fact "predominate over any questions affecting only individual members and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."  Fed. R. Civ. P. 23(b)(3). This inquiry examines "whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  *Amchem*, 521 U.S. at 623.  Satisfaction of Rule 23(a) "goes a long way toward satisfying the Rule 23(b)(3) requirement of commonality."  *Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590, 598 (2d Cir. 1986).

---

[2]     Two of the Named Plaintiffs – Robert O'Dell and Alicia Perez – have individual discrimination claims against AMF that are unrelated to this lawsuit.  Mr. O'Dell has settled his claims in a separate agreement with AMF.  Ms. Perez has filed a separate individual lawsuit against AMF and is not represented by putative Class Counsel in that matter.  (Swartz Dec. ¶ 14 n.1.)

### 1.     Common Questions Predominate

Predominance requires that "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, . . . predominate over those issues that are subject only to individualized proof." *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 136 (2d Cir. 2001). The essential inquiry is whether "liability can be determined on a class-wide basis, even when there are some individualized damage issues." *In re Visa Check*, 280 F.3d at 139. Where plaintiffs are "unified by a common legal theory" and by common facts, the predominance requirement is satisfied. *McBean v. City of New York*, 228 F.R.D. 487, 502 (S.D.N.Y. 2005).

Here, all members of the class are unified by common factual allegations – that all class members worked for AMF as hourly food and beverage workers and were not paid a portion of the mandatory gratuities and voluntary tips that AMF's customers paid. They are also unified by a common legal theory – that AMF's tip appropriation policies violate New York law. *See Mohney*, 2009 U.S. Dist. LEXIS 27899, at *12.

The only individualized issues pertain to the calculation of damages. Individualized damages calculations do not defeat the Rule 23(b)(3) predominance requirement. *See Frank*, 228 F.R.D. at 183 (collecting cases holding that calculation of damages in wage and hour litigation does not impact the predominance analysis).

### 2.     A Class Action is a Superior Mechanism

Superiority analyzes whether "the class action device [is] superior to other methods available for a fair and efficient adjudication of the controversy." *Green v. Wolf Corp.*, 406 F.2d 291, 301 (2d Cir. 1968). Rule 23(b)(3) sets forth a non-exclusive list of relevant factors, including whether individual class members wish to bring, or have already brought, individual

actions; and the desirability of concentrating the litigation of the claims in the particular forum. Fed. R. Civ. P. 23(b)(3).[3]

Here, Plaintiffs and the class members have limited financial resources with which to prosecute individual actions, and Plaintiffs are unaware of any individual lawsuits that have been filed by class members arising from the same allegations. Concentrating the litigation in this Court is desirable because allegedly wrongful conduct occurred within the jurisdiction of this Court. Moreover, employing the class device here will achieve economies of scale for putative class members, conserve judicial resources, and preserve public confidence in the system by avoiding repetitive proceedings and preventing inconsistent adjudications. *See Hanlon*, 150 F.3d at 1023.

## II.    <u>The Proposed Settlement is Fair, Reasonable, and Adequate and Should be Approved in All Respects</u>

Rule 23(e) requires court approval for a class action settlement to ensure that it is procedurally and substantively fair, reasonable, and adequate. Fed. R. Civ. P. 23(e). To determine procedural fairness, courts examine the negotiating process leading to the settlement. *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc*., 396 F.3d 96, 116 (2d Cir. 2005); *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001). To determine substantive fairness, Courts determine whether the settlement's terms are fair, adequate, and reasonable according to the factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974).

---

[3]    Another factor, whether the case would be manageable as a class action at trial, is not of consequence in the context of a proposed settlement. *See Amchem*, 521 U.S. at 620 ("[c]onfronted with a request for settlement-only class certification, a [trial] court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial"); *Frank*, 228 F.R.D. at 183 ("The court need not consider the [manageability] factor, however, when the class is being certified solely for the purpose of settlement."). Moreover, denying class certification on manageability grounds is "disfavored" and "should be the exception rather than the rule." *In re Visa Check*, 280 F.3d at 140 (internal quotation marks omitted).

Courts examine procedural and substantive fairness in the light of the "strong judicial policy favoring settlements" of class action suits. *Wal-Mart Stores*, 396 F.3d at 116; *see also Spann v. AOL Time Warner, Inc.*, No. 02 Civ. 8238, 2005 U.S. Dist. LEXIS 10848, at *19-20 (S.D.N.Y. June 7, 2005) ("[P]ublic policy favors settlement, especially in the case of class actions."). When, as here, "a settlement is negotiated prior to class certification, . . . it is subject to a higher degree of scrutiny in assessing its fairness." *D'Amato*, 236 F.3d at 85; *Spann*, 2005 U.S. Dist. 10848, at *16. Here, even under high scrutiny, procedural and substantive considerations support approving the proposed settlement.

### A.    The Proposed Settlement is Procedurally Fair

The proposed settlement is procedurally fair because it was reached through arm's-length negotiations and after experienced counsel had evaluated the merits of Plaintiffs' claims. A "presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arm's length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores*, 396 F.3d at 116 (quoting *Manual for Complex Litigation, Third*, § 30.42 (1995)); *see also D'Amato,* 236 F.3d at 85. "Absent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *In re EVCI Career Colls. Holding Corp. Sec. Litig*., No. 05 Civ. 10240, 2007 U.S. Dist. LEXIS 57918, at *12 (S.D.N.Y. July 27, 2007); *In re Top Tankers, Inc. Sec. Litig*., No. 06 Civ. 13761, 2008 U.S. Dist. LEXIS 58106, at **10-11 (S.D.N.Y. July 31, 2008); *In re BankAmerica Corp. Sec. Litig.*, 210 F.R.D. 694, 700 (E.D. Mo. 2002) ("In evaluating the settlement, the Court should keep in mind the unique ability of class and defense counsel to assess the potential risks and rewards of litigation; a presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arms-length negotiations between experienced, capable counsel after meaningful discovery.") (internal quotation marks omitted).

Here, the settlement was reached after Plaintiffs had conducted a thorough investigation and evaluated the claims, and after extensive negotiations between the parties. Plaintiffs engaged in substantial informal discovery before agreeing to resolve this case, including reviewing tip and gratuity allocation data, event contracts, and invoices spanning a six-year period; job descriptions of employees who Plaintiffs alleged were tip-ineligible; and company memoranda describing AMF's tip policies. (Swartz Dec. ¶¶ 6-10.) Plaintiffs' counsel also obtained factual information from Named Plaintiffs regarding their job duties and the job duties of employees who Plaintiffs alleged were tip-ineligible. (*Id.* at ¶ 10.) From the data obtained through discovery, Plaintiffs' counsel were able to evaluate the strength of Plaintiffs' claims. Plaintiffs' counsel also determined that AMF's 300 Centers, and in particular the 300 Center at Chelsea Piers, generated the vast majority of the tips and gratuities that Plaintiffs allege were misappropriated. (*Id.* at ¶¶ 7-9.)

To resolve the case, the parties enlisted the services of experienced employment mediator Michael D. Young of JAMS. (*Id.* at ¶ 11.) The parties participated in a full day of mediation on June 12, 2009 at which they reached agreement on the material terms of the settlement. (*Id.* at ¶ 12.) After negotiating for ten more weeks, the parties resolved the remaining terms of the settlement, including the timing and allocation of the payments. (*Id.* at ¶ 13.) The parties signed the Settlement Agreement on August 27 and 28, 2009. (*Id*. at ¶ 14.) At all times during the settlement process, the parties negotiated on an arm's-length basis. (*Id.* at ¶ 15.) These arm's-length negotiations involving counsel and a mediator well-versed in wage and hour law raise a presumption that the settlement they achieved meets the requirements of due process. *See Wal-Mart Stores*, 396 F.3d at 116; *Mohney*, 2009 U.S. Dist. LEXIS 27899, at *13.

### B.    The Proposed Settlement is Substantively Fair

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974),.provides the analytical

framework for evaluating the substantive fairness of a class action settlement.  The "*Grinnell*

factors" guide district courts in this determination.  They are: (1) the complexity, expense and

likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the

proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the

risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7)

the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of

the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of

the settlement fund to a possible recovery in light of all the attendant risks of litigation.  *Grinnell*,

495 F.2d at 463.  All of the *Grinnell* factors weigh in favor of final approval of the Settlement

Agreement.

### 1.    Litigation Through Trial Would be Complex, Costly, and Long (*Grinnell* Factor 1)

By reaching a favorable settlement prior to dispositive motions or trial, Plaintiffs seek to

avoid significant expense and delay, and ensure a speedy, risk-free recovery for the class.  "Most

class actions are inherently complex and settlement avoids the costs, delays and multitude of

other problems associated with them."  *In re Austrian & German Bank Holocaust Litig.*, 80 F.

Supp. 2d 164, 174 (S.D.N.Y. 2000).  This case is no exception, with approximately 1,648

putative class members and two sets of claims under state law.

Although there has been significant informal discovery, (Swartz Dec. ¶¶ 6-10), additional

discovery would be required to establish liability and damages, including depositions of

Plaintiffs, AMF managers, and industry experts.  A trial would be fact-intensive, with testimony

by Defendant, Plaintiffs, class members, and experts.  Preparing and putting on evidence at such

a trial would consume tremendous amounts of time and resources and demand substantial

judicial resources. A trial on damages, even on a representative basis, would be costly and

would further defer closure. Any judgment would likely be appealed, thereby extending the

duration of the litigation. This settlement, on the other hand, makes monetary relief available to

class members in a prompt and efficient manner. Therefore, the first *Grinnell* factor weighs in

favor of final approval.

2.    **The Reaction of the Class Has Been Positive**
      **(*Grinnell* Factor 2)**

"It is well-settled that the reaction of the class to the settlement is perhaps the most

significant factor to be weighed in considering its adequacy." *Maley v. Dale Global Techs.*

*Corp.,* 186 F. Supp. 2d 358, 362-63 (S.D.N.Y. 2002). The lack of class member objections "may

itself be taken as evidencing the fairness of a settlement." *RMED Int'l, Inc. v. Sloan's*

*Supermarkets, Inc.,* No. 94 Civ. 5587, 2003 U.S. Dist. LEXIS 8239, at *4 (S.D.N.Y. May 15,

2003).

Here, the Notice included a detailed explanation of the allocation formula and estimates

of how much each Class Member would receive based on the location and dates of their

employment. The Notice also informed Class Members that they could object to or exclude

themselves from the Settlement and explained how to do so. No Class Member objected to the

Settlement, and only one, a Traditional Center Class Member, requested exclusion. (Swartz Dec.

¶ 29; Ex. F (Kovach Dec.) ¶ 8.) This favorable response demonstrates that the Class approves of

the results, which supports final approval. *See Damassia v. Duane Reade, Inc.*, No. 04 Civ.

8819, No. 04 Civ. 2295, 2009 U.S. Dist. LEXIS 77489 (S.D.N.Y. July 27, 2009) (finding

settlement to be fair, reasonable, and adequate where no class members objected and only one

class member opted out); *Wright v. Stern*, 553 F. Supp. 2d 337, 344-45 (S.D.N.Y. 2008) (where

13 out of 3,500 class members objected and 3 opted-out, noting that "[t]he fact that the vast majority of class members neither objected nor opted out is a strong indication" of fairness).

### 3.    Discovery Has Advanced Far Enough to Allow the Parties to Resolve the Case Responsibly (*Grinnell* Factor 3)

The parties have completed enough discovery to recommend settlement.  The pertinent question is "whether counsel had an adequate appreciation of the merits of the case before negotiating."  *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 527 (3d Cir. 2004).  The parties' discovery here meets this standard.  Plaintiffs obtained substantial document discovery from AMF, including tip and gratuity allocation data, event contracts, and invoices spanning a 6 year period; job descriptions of employees who Plaintiffs allege were tip-ineligible, and memoranda describing AMF's tip policies.  (Swartz Dec. ¶ 6.)  Plaintiffs' counsel also obtained factual information from the Named Plaintiffs regarding their job duties and the job duties of AMF's employees whom Plaintiffs alleged were ineligible for tips, as well as AMF's policies and procedures for allocating tips.  (Swartz Dec. ¶ 10.)  The parties engaged in a full day of mediation during which they advocated their positions and engaged in vigorous back and forth regarding their respective claims and defenses.

The parties were well-equipped to evaluate the strengths and weaknesses of the case.  *See Frank*, 228 F.R.D. at 185 (approving settlement of case "in relatively early stages of discovery" where parties had exchanged extensive information pertaining to the identities of class members and to Defendant's time and pay practices and where counsels' negotiations, while "cooperative," had "been in no way collusive").  This factor also supports final approval.

**4.      Plaintiffs Would Face Real Risks if the Case Proceeded (*Grinnell* Factors 4 and 5)**

The risks of establishing liability and damages further weigh in favor of final approval. "Litigation inherently involves risks." *In re Painewebber Ltd. P'ships Litig.,* 171 F.R.D. 104, 126 (S.D.N.Y. 1997). Indeed, "if settlement has any purpose at all, it is to avoid a trial on the merits because of the uncertainty of the outcome." *In re Ira Haupt & Co.,* 304 F. Supp. 917, 934 (S.D.N.Y. 1969); *see also Velez v. Majik Cleaning Serv., Inc.,* No. 03 Civ. 8698, 2007 U.S. Dist. LEXIS 46223, at *21-22 (S.D.N.Y. June 22, 2007). In weighing the risks of establishing liability and damages, the court "must only weigh the likelihood of success by the plaintiff class against the relief offered by the settlement." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 177 (internal quotation marks omitted).

Although Plaintiffs' case is strong, it is not without risk. A trial on the merits would involve significant risk as to both liability and damages because of the fact-intensive nature of proving Plaintiffs' NYLL claims. With respect to the tip claims, Plaintiffs may face challenges proving that some of the positions to which AMF allocated tips are tip-ineligible under the NYLL. The inquiry will be fact-intensive and involve extensive testimony by both parties regarding the duties performed by allegedly tip-ineligible employees. With respect to the mandatory gratuity claim, Plaintiffs may have difficulty proving that AMF's customers believed that the gratuities were meant for the hourly food service workers who staffed the events and not for sales representatives, party planners, and other non-food and beverage employees who helped to coordinate the events. Even if Plaintiffs were successful at trial, AMF would likely appeal.

While Plaintiffs believe that they could ultimately establish AMF's liability, this would require significant factual development and favorable outcomes at trial and on appeal, both of

which are inherently uncertain and lengthy.  The proposed settlement alleviates this uncertainty.
These factors therefore weigh in favor of final approval.

### 5. Establishing a Class and Maintaining it Through Trial Would Not Be Simple (*Grinnell* Factor 6)

The risk of maintaining class status throughout trial is also present.  The Court has not yet
certified the class and such a determination would likely be reached only after exhaustive
briefing by both parties.  AMF may argue that individual questions, including whether particular
customers believed that the mandatory gratuities were meant for particular food and beverage
workers and whether duties varied across bowling center locations, preclude class certification.
They also may argue that a class action is not a superior method to resolve Plaintiffs' claims and
that a class trial would not be manageable.

Should the Court certify the class, AMF could later challenge certification and move to
decertify, forcing another round of briefing.  AMF could also seek permission to file an
interlocutory appeal under Federal Rule of Civil Procedure 23(f).  Risk, expense, and delay
permeate such a process.  Settlement eliminates this risk, expense, and delay.  This factor favors
final approval.

### 6. AMF's Ability to Withstand a Greater Judgment Is Not Assured (*Grinnell* Factor 7)

Even if AMF could withstand a greater judgment, a "defendant's ability to withstand a
greater judgment, standing alone, does not suggest that the settlement is unfair."  *Frank*, 228
F.R.D. at 186 (quoting *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 178
n.9).  Here, the Settlement Agreement eliminates the risk of collection by requiring AMF to pay
the Fund into escrow on or before September 15, 2009.  (Ex. C (Settlement Agreement)

¶ 3.1(B).)  AMF in fact deposited the Fund into an interest-bearing escrow account on September 14, 2009.  (Swartz Dec. ¶ 14.)  Accordingly, this factor also favors final approval.

7.    <strong>The Settlement Fund is Substantial in Light of the Possible Recovery and the Attendant Risks of Litigation (<em>Grinnell</em> Factors 8 and 9)</strong>

The substantial amount of the settlement relative to Class Members' claimed damages weighs strongly in favor of final approval.  The determination of whether a settlement amount is reasonable "does not involve the use of a 'mathematical equation yielding a particularized sum.'" *Frank*, 228 F.R.D. at 186 (quoting *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 178).  "Instead, 'there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'"  *Id.* (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)).

"[T]here is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery."  *Grinnell*, 495 F.2d at 455 n.2.  Courts in this Circuit have approved class settlements even where the amount of the settlement is a small percentage of the best possible recovery.  *See Spann*, 2005 U.S. Dist. LEXIS 10848, at *19-20 (granting final approval where $2.9 million class settlement was only 18% of plaintiffs' highest possible litigation payoff); *Cagan v. Anchor Sav. Bank FSB*, No. 88 Civ. 3024, 1990 U.S. Dist. LEXIS 11450, at *34-35 (E.D.N.Y. May 17, 1990) (approving $2.3 million class settlement over objections that the "best possible recovery would be approximately $121 million"); *Brooks v. Am. Export Indus., Inc.*, No. 71 Civ. 5128, 1977 U.S. Dist. LEXIS 17313, at *16-18 (S.D.N.Y. Feb. 17, 1977) (approving settlement of less than 1% of the best possible recovery).

Here, the settlement amount is substantial relative to Class Members' estimated damages. The $670,000 amount represents approximately 63% of Plaintiffs' estimated recovery if Plaintiffs prevailed at trial on all claims and survived an appeal. The chart below estimates the approximate awards that Traditional Center and 300 Center employees will receive under the settlement based on the length of their employment:

|  | ONE MONTH | TEN MONTHS | 1.5 YEARS | 3 YEARS | 6 YEARS |
|---|---|---|---|---|---|
| **Trad'l Centers** | N/A | $15 | $27 | $54 | $106 |
| **300 Center (Chelsea Piers)** | $111 | $1,079 | $1,965 | $3,990 | $7,165 |
| **300 Center (Melville)** | $30 | $282 | $500 | $1000 | $1590 |

When settlement assures immediate payment of substantial amounts to class members, "even if it means sacrificing 'speculative payment of hypothetically larger amount years down the road,'" settlement is reasonable under this factor. *See Gilliam v. Addicts Rehab. Ctr. Fund*, No. 05 Civ. 3452, 2008 U.S. Dist. LEXIS 23016, at *5 (S.D.N.Y. Mar. 24, 2008) (quoting *Teachers' Ret. Sys. of Louisiana v. A.C.L.N., Ltd.*, No. 01 Civ. 11814, 2004 U.S. Dist. LEXIS 8608, at *16 (S.D.N.Y. May 14, 2004)). Weighing the benefits of the settlement against the risks associated with proceeding in the litigation, the settlement amount is more than reasonable.

Moreover, the injunctive relief offered by this settlement also has substantial value for current (and future) employees of AMF. Under the Settlement Agreement, AMF is obligated to change its tip and mandatory gratuity policies to ensure that only food and beverage workers receive customer tips.

These factors therefore weigh in favor of final approval.

\*        \*        \*

In sum, all of the *Grinnell* factors weigh in favor of granting final approval of the settlement. Because the settlement is "'fair, adequate, and reasonable, and not a product of

22

collusion,'" *Frank*, 228 F.R.D. at 184 (quoting *Joel A. v. Giuliani,* 218 F.3d 132, 138-39 (2d Cir.

2000)), the Court should grant final approval.


## CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court approve as

fair, reasonable, and adequate the class-wide settlement of this action as set forth in the

Settlement Agreement.

Dated:          New York, New York
                November 19, 2009

                        Respectfully submitted,

                        **OUTTEN & GOLDEN LLP**
                        By:

                        /s/ Justin M. Swartz
                        Justin M. Swartz (JS 7989)

                        **OUTTEN & GOLDEN LLP**
                        Justin M. Swartz (JS 7989)
                        Rachel Bien (RB 6919)
                        3 Park Avenue, 29th Floor
                        New York, New York 10016
                        Telephone:  (212) 245-1000

                        **FITAPELLI & SCHAFFER, LLP**
                        Joseph A. Fitapelli (JAF 9058)
                        Brian S. Schaffer (BSS 7548)
                        1250 Broadway, Suite 3701
                        New York, New York 10001
                        Telephone:  (212)300-0375

                        **Attorneys for Plaintiffs and the Class**